[L. A. No. 11141. In Bank.—May 31, 1929.]

THE STATE BAR OF CALIFORNIA (a Public Corporation), Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

324

Eustace Cullinan, Maurice E. Harrison, Victor E. Shaw and Kenyon F. Lee for Petitioner.

Oscar Lawler, John Francis Neylan, John M. Hall and Alexander T. Sokolow for Respondents.

Rex B. Goodcell, W. Joseph Ford, Paul W. Schenck and Rex Hardy, *Amici Curiae.*

RICHARDS, J.—The application herein was for a writ of mandate directing the Superior Court in and for the County of Los Angeles and Honorable Marshall F. McComb, a judge thereof, to require Carlos S. Hardy, then and still also a judge of said Superior Court, to be sworn and testify before a certain body designated in said application as "a special committee" pursuant to the provisions of section 26 of the "State Bar Act" [Stats. 1927, p. 38], appointed by that certain organization known as "The State Bar of California" and directed by the terms of its appointment "to take evidence and make findings on behalf of the Board in the matter of the conduct of Carlos S. Hardy, a judge of the superior court in and for the county of Los Angeles, in connection with the payment to said Carlos S. Hardy . . . of the sum of twenty-five hundred dollars ($2500.00) or thereabouts on or about August 12, 1926 and all matters relating thereto." The application presented and filed herein does not set forth, other than as above stated, the particular conduct of the respondent Carlos S. Hardy which was being made the subject of investigation by the aforesaid committee, but it sufficiently appears from the record herein that the

matter relative to which the investigation undertaken by said committee was being conducted was that of the alleged acceptance by said respondent Hardy of the aforesaid money for legal services rendered to the persons named in said application while a judge of said Superior Court. It is set forth in the application herein that said special committee fixed a time and place of meeting for the purpose of conducting its hearings in the course of its said investigation and that the respondent Carlos S. Hardy, being notified thereof, was present at said time and place and was thereupon asked to be sworn and testify in said matter, but upon the advice of his counsel refused to be sworn or to give his testimony before the committee; and that thereupon and acting under and in accordance with section 34 of said ''State Bar Act'' the committee reported to the respondent Superior Court of said county the refusal of said Carlos S. Hardy to be sworn or to testify before said committee as above set forth, and asked that said respondent court issue an attachment in the usual form and having for its purpose the bringing of said Carlos S. Hardy before said court in order that he might be punished for contempt conformably to the aforesaid section of said act; that said respondent court accordingly made and issued its order requiring the said Carlos S. Hardy to appear before Honorable Marshall F. McComb, a judge of said court, at a certain time and place, then and there to show cause, if any he had, why he should not be adjudged guilty of contempt of said special committee of The State Bar of California by refusing to be sworn and testify before it at the time and place and in the matter aforesaid; that said Carlos S. Hardy appeared before said court and the judge thereof responsive to said order and presented a demurrer to the petition of the committee, based upon the ground that ''said petition does not set forth sufficient facts to vest this Honorable Court with jurisdiction of the subject matter in said petition stated''; that upon the hearing had upon said demurrer the respondent court and the said judge thereof sustained the same and in so doing adjudged that upon July 29, 1927, the effective date of said State Bar Act, said Carlos S. Hardy was and still is a duly elected, qualified and acting judge of the Superior Court of the State of California, in and for the County of Los Angeles, and therefore and for that reason was and is not a member

of "The State Bar of California"; and that, therefore, said petitioner and its said special committee did not have jurisdiction over the person of said Carlos S. Hardy or of the subject matter aforesaid, and that respondent by reason thereof was without jurisdiction to punish said Carlos S. Hardy for contempt under the provisions of the State Bar Act. Thereupon the application for an alternative writ of mandate was filed herein, and such writ having been issued and a return having been made thereto and a hearing had thereon, the matter as to whether such writ be made permanent is now before this court for decision.

■ The so-called "State Bar Act" was adopted by the legislature and approved by the Governor of California on March 31, 1927, and became effective on July 29, 1927. (Stats. 1927, p. 38.) In the title of the act it is stated to be "An act to create a public corporation to be known as 'The State Bar of California.'" It is insisted by certain counsel for said Carlos S. Hardy, who have appeared as *amici curiae* and have presented briefs herein in opposition to this application, that the writ of mandate should not be made permanent herein for the reason that the State Bar Act is unconstitutional upon the several grounds set forth in the briefs of counsel so appearing. The question thus presented stands upon the threshold of this discussion. It is contended by counsel thus appearing in opposition to the issuance of such writ that the State Bar Act is unconstitutional as in violation of article XII, section 1, of the state constitution, which provides that "Corporations may be formed under general laws, but shall not be created by special acts." If, however, "The State Bar of California" is, as it was stated in the title and also in the body of the State Bar Act to be, "a public corporation," it would seem that the foregoing provision of the constitution would not have application, for the reason that said provision thereof has been held by this court to refer only to *private* corporations. (*Napa State Hospital* v. *Dasso,* 153 Cal. 698, 703 [15 Ann. Cas. 910, 18 L. R. A. (N. S.) 643, 96 Pac. 355].) ■ It is however, insisted by said counsel that notwithstanding the designation of "The State Bar of California" as a public corporation to be formed under the provisions of said act, it is not and cannot be, or be formed as, such public corporation for the reason that it is not brought by the terms

of said act within the definition of a public corporation as set forth in section 284 of the Civil Code as follows: ''Corporations are either public or private. Public corporations are formed or organized for the government of a portion of the state. All other corporations are private.'' It is to be noted in considering this contention that the constitution does not attempt to define the several sorts of corporations which may be formed by or in accordance with legislative action, but that the foregoing definition of what shall constitute public as distinguished from private corporations is purely of statutory origin. This being so it must be clear that the provisions of the Civil Code above quoted could not be held to constitute a limitation upon later legislation to create public corporations for other purposes than those relating to ''the government of a portion of the state.'' It is a fact within general knowledge that the state legislature has, upon not a few occasions since the adoption both of our present constitution and of the foregoing section of the Civil Code, provided for the creation of various kinds of public corporations or associations which did not have for their function or purpose the ''government of a portion of the state.'' Such, for example, was Reclamation District No. 551, which was organized under certain laws enacted by the legislature for the expressed purpose of the reclamation of certain swamp and overflowed lands. In upholding these laws relating to its creation this court held that the districts to be formed thereunder, while public corporations, were neither municipal corporations nor were they to be held to belong to either of the classes of corporations defined by section 284 of the Civil Code. (*People* v. *Reclamation Dist. No. 551*, 117 Cal. 114 [48 Pac. 1016].) The same ruling was made in the case of *People* v. *Levee Dist. No. 6*, 131 Cal. 30 [63 Pac. 676], and in the case of *In re Madera Irr. Dist.*, 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272], wherein this court, in sustaining the validity of the Wright Act (Stats. 1887, p. 29), declared: ''That the legislature is vested with the whole of the legislative power of the state, and that it has authority to deal with any subject within the scope of civil government, except in so far as it is restrained by the provisions of the Constitution, and that it is the sole tribunal to determine as well the expediency as the details of all

legislation within its power, are principles so familiar as hardly to need mention. The declaration in article IV, section 1, of the Constitution: 'The legislative power of this state shall be vested in a senate and assembly, which shall be designated the legislature of the state of California,—' comprehends the exercise of all the sovereign authority of the state in matters which are properly the subject of legislation; and it is incumbent upon anyone who will challenge an act of the legislature as being invalid to show, either that such act is without the province of legislation, or that the particular subject matter of that act has been by the Constitution, either by express provision or by necessary implication, withdrawn by the people from the consideration of the legislature. The presumption which attends every act of the legislature is, that it is within its power; and he who would except it from the power must point out the particular provision of the Constitution by which the exception is made, or demonstrate that it is palpably excluded from any consideration whatever by that body." (See, also, *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416]; *People* v. *San Joaquin Valley Assn.,* 151 Cal. 797 [91 Pac. 740].)

 It is further, however, urged by said counsel that notwithstanding the express declaration embodied in the title and also in the body of the State Bar Act that the corporation to be formed and to function thereunder is to be a public corporation, it cannot be held to be other than a private corporation in view of its membership, its functions, the purposes of its creation, and, finally, its independence of public regulation and control. Dealing with these objections in the order of their statement, it is a matter of public history and general knowledge that the profession and practice of the law embraces in its membership probably the largest and certainly the most influential body of individuals, having a definite and common objective, of any similar professional association of citizens of this or of any other of the commonwealths of our common country. This body of our citizenry known to the laws of this state as "attorneys and counselors at law" form an integral and indispensable unit in our system of administering justice which has come down to us under the name of Anglo-Saxon jurisprudence, and without the constant presence and contacts of which courts could not function nor the orderly administration

of justice go on. Attorneys and counselors at law have long been known as "officers of the court," and as such they have for centuries been required to undergo certain courses of preparation and to assume certain solemn obligations relative to their training, character and conduct as such; and these not only with respect to their relation to the courts, but also with regard to their relation to the public at large. Thus it is that the profession and practice of the law, while in a limited sense a matter of private choice and concern in so far as it relates to its emoluments, is essentially and more largely a matter of public interest and concern, not only from the viewpoint of its relation to the administration of civil and criminal law, but also from that of the contacts of its membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession. It is to be noted also that from the body of the legal profession it is required, by both the constitution and statutory law of this and most other states, the justices and judges of all courts of record and of certain other subordinate tribunals must be chosen. It is for each and all of these reasons that the membership, character and conduct of those entering and engaging in the legal profession have long been regarded as the proper subject of legislative regulation and control; and it has never heretofore been considered, so far as we have been made aware, that, at least in this commonwealth, the exercise of a reasonable degree of regulation and control over the profession and practice of the law, constituted an intrusion into the domain of our state organization constitutionally assigned to the judicial department thereof. From almost the inception of our state government statutory provision has been made for the admission, disbarment, suspension or disciplining of members of the legal profession. (Stats. 1851, p. 48.) It is not necessary herein to review the changes which have occurred in the course of our statutory regulations in this regard, nor even to consider in detail the various tribunals and administrative bodies to which from time to time these regulatory functions have been assigned, since the purpose of this branch of our inquiry has been attained when we arrive at

the conclusion, as we do, from the foregoing considerations that the profession and practice of the law is not such a matter of purely private concern that the effort on the part of the legislature to put the regulation thereof into the organized form contemplated by the State Bar Act is to be regarded and held as an attempt to provide for the formation of a private corporation. ■ It is, however, further insisted by counsel appearing as *amici curiae* herein that the State Bar Act is violative of article IV, section 25, subdivision 19, of the state constitution, which forbids the legislature to pass local or special laws "granting to any corporation, association or individual any special or exclusive right, privilege or immunity." The answer to this objection is contained within the very terms of the foregoing constitutional inhibition when applied to the act in question, since it would seem to be apparent that the act cannot be regarded as a local or special law. It is true that in the title or body of the act it is not expressly stated in so many words to be a general law, but it is not necessary so to be if from the content of the act itself it appears that it applies to all of the class of persons with respect to which it purports to legislate, and that as to such classification it is apparently based upon a reasonable distinction. It requires but a cursory glance at the provisions of the State Bar Act to determine that it has inclusive application to each and every member of the legal profession within the state of California who is actively engaged and entitled to engage in the practice of the law, and that it purports to regulate the admission, conduct and continuance in the practice of the law of this certain and well-recognized professional class of the body politic coming within the precise limitations of said act, as these will presently be more particularly set forth and defined. In support of their foregoing contention we are cited by said counsel to certain decisions of the Supreme Court of the state of Idaho, holding a certain State Bar Act adopted a number of years ago, and later sought to be amended by the legislature of that state, to be for certain reasons therein stated a private corporation created by special laws. It will suffice here to say that we do not approve of either the reasoning or conclusions of these Idaho cases and decline to adopt or follow them.

As to the final contention of said counsel that the State Bar Act here in question is as to certain of its provisions in violation of article I, section 21, of the state constitution, which among the "Declarations of Rights" in said article enumerated states: "Nor shall any citizen, or class of citizens, be granted privileges or immunities which upon the same terms shall not be granted to all citizens," we do not deem a discussion of this phase of the State Bar Act to be germane to the issues involved in this special proceeding for reasons which clearly appear when, having determined, as we now do, that said act is otherwise constitutional, we turn to a consideration of the particular provisions of the act with respect to their applicability to the precise issue before us in the instant case. The title of said State Bar Act purports to set forth that the purpose of the act in making provision for the creation of The State Bar of California "is to provide for its organization, government, membership and powers, to regulate the practice of law, and to provide penalties for violation of said act." In the body of the act it is provided in section 3 thereof that, "The first members of the State Bar shall be all persons *now entitled to practice* law in this state." By the terms of section 7 thereof it is provided that "after the organization of The State Bar, as herein provided, all persons who are admitted to practice in accordance with the provisions of this act shall become by that fact members of The State Bar." By the provisions of sections 4, 5, 6 and 8 thereof members of The State Bar are classified as "active" and "inactive" members thereof, but with the classification as to inactive members we have no present concern. That it was the "active" members of the legal profession in California which it was the manifest purpose of said act to organize into a "State Bar" sufficiently appears not only in the title of the act, which expressly states its purpose to be "to regulate the practice of law," but also from the body of the act itself, as will appear from the following further extracts from its numerous subdivisions. Section 3 thereof provides that the first members of The State Bar shall be "all persons now entitled to practice law in this state." Section 12 thereof provides that the first members of the governing board of said State Bar to be appointed immediately upon the act becoming effective

"shall be selected from among those qualified for active membership in The State Bar." Section 15 of the act provides that in the subsequent election or elections of members of the board of governors "only active members of The State Bar . . . shall be entitled to vote" for the governor or governors from their respective districts. Section 30 of the act provides for the appointment by the board of governors of such administrative committees as it may deem advisable. "Such committees shall be composed of active members of The State Bar." And, finally, by the provisions of section 47 of the act, "No person may practice law in this state subsequent to the first meeting of The State Bar unless he shall be an active member thereof as hereinbefore defined." When we turn to those sections of the State Bar Act which purport to invest the board of governors, or its administrative committees, with governmental functions and disciplinary powers we find that these uniformly and expressly have relation to the *practice* of the law. Section 24 thereof contains the grant of power to said board to determine the qualifications "for admission to *practice law* in this state," with frequent iteration of the foregoing phrase; while section 26 of the act embraces those disciplinary powers which are to be exercised through the disbarment, suspension, removal or reinstatement of those persons who, while actively engaged in the practice of the law, have brought themselves within the terms of said section of the act; while section 49 thereof provides that, "Any person who, not being *an active member* of The State Bar, or who, after he has been disbarred or while suspended from membership in The State Bar, as by this act provided, *shall practice law*, shall be guilty of a misdemeanor."

From a consideration of the foregoing terms and intendments of the State Bar Act it would seem to be fairly deducible that the act as to its scope, purposes and conferred powers was intended by the framers thereof to be limited to those members of the legal profession who were engaged and were and are entitled to be engaged in the practice of law. The term "practice of law" has been defined in occasional cases, but perhaps as concrete and inclusive a definition as any is that contained in the case of *Eley* v. *Miller*, 7 Ind. App. 529 [34 N. E. 836], wherein the court says: "As the term is generally understood, the

'practice' of the law is the doing or performing services in a court of justice, in any matter pending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be pending in a court.'' With the foregoing statement, and with this definition in mind, we arrive at the consideration of the immediate issue before us. The record herein discloses that both at the time of the taking effect of the State Bar Act and at the dates which the particular investigation out of the sequences of which the instant application arose was initiated by the board of bar governors of The State Bar of California Carlos S. Hardy was, and for some years prior thereof had been, a duly admitted and qualified attorney and counselor at law within the state of California. It further, however, appeared that during said time he was also one of the number of superior judges, duly elected, qualified and functioning as such in and as a part of the Superior Court of Los Angeles County. Being such he was subject to each and all of the constitutional provisions which have application to that particular constitutional court of record and to the judges thereof. ■ Among these provisions is that to be found in article VI, section 22, of the constitution, which provides as follows: ''No judge of a court of record shall practice law in any court of this state during his continuance in office.'' Under the foregoing definition of the phrase ''practice law'' it must be held to have been intended by the framers of this provision of the constitution that its inhibition should be inclusive enough to embrace each and all of those professional activities which are included within said definition, since otherwise the obvious purpose of imposing this particular inhibition upon those occupying judicial positions would, or at least could, be subverted. The foregoing provision of the constitution is to be considered in connection with the immediately following provision thereof, which reads: ''No one shall be eligible to the office of a justice of the supreme court or of the district court of appeal or of a judge of the superior court or of a municipal court, unless he shall have been admitted to practice before the Supreme Court of the state for a period of at

least five years immediately preceding his election or appointment to such office." When so read in connection with the phraseology of the State Bar Act, to which we have above directed attention, it would seem to be sufficiently clear that the term "eligible" and the term "entitled," as used in these several provisions of the law, have each a distinctive meaning; and that as to each of these terms they should be given such application to the first of the foregoing provisions of the constitution as to import the meaning that no person, however eligible to practice law in this state, shall be entitled so to do while he occupies the office of a justice or judge of a court of record and during the period of his continuance in such office. The effect of such an interpretation of said constitutional provision would logically be that whatever right an attorney and counselor at law might have been invested with by virtue of his admission to practice, and whatever might be his eligibility so to do, was to be so far held in suspension during his incumbency in any such judicial office that he would not be entitled to the exercise of such right during such time. Such interpretation, aside from the soundness of its reason, has authority for its support in the case of *In re Silkman,* 88 App. Div. 102 [84 N. Y. Supp. 1025], as to whether a surrogate in the state of New York and in counties thereof having a population in excess of 120,000 was entitled to practice law, in the face of a constitutional provision which declared that no surrogate in any such county should practice as an attorney or counselor in any court of record in said state. The court held that the petitioner, Silkman, was upon taking such office "suspended from practice as effectively as he could possibly be by any order of this court." In the later case of *In re Strahl,* 201 App. Div. 729 [195 N. Y. Supp. 385], it was held by the same court with reference to a justice of the municipal court that "Under the laws of this state the right to practice law by one holding such a judicial office as the respondent is suspended during his incumbency." It was similarly so decided by the Supreme Court of Florida in the case of *Perry* v. *Bush,* 46 Fla. 242 [35 South. 225]. We are cited to no authority conflicting with the views expressed in these decisions.

If, therefore, we are correct in the conclusion that under the provisions of article VI, section 22, of the state

constitution, no person holding judicial office in a court of record in this state is entitled to practice law during his continuance in such office, it would seem to follow irresistibly that the provisions of the State Bar Act relating to those over whom the regulatory jurisdiction and power of the public corporation created thereunder are to be exercised cannot be held to extend to those persons who, however regularly admitted thereto, and however otherwise eligible to engage in the practice of the law, are not entitled to actively engage in such practice during their incumbency in any judicial office which comes within the inhibition of said article and section of the state constitution. This conclusion is abundantly supported and strengthened when we come to consider the consequences which would legally follow the violation of the foregoing provision of the state constitution. An attorney and counselor at law who may be the incumbent of a judicial office, by essaying to practice law, does not by so doing violate any particular principle of legal ethics to which our attention has been directed. This is shown by the fact that the occupants of judicial positions in the courts of this state not of record, who are otherwise eligible so to do, may and in most instances do practice law without any suggestion that in so doing they are violating either former or existing laws defining and regulating the ethical practices of the legal profession.

The offense of a judge of a court of record who violates the foregoing provision of the constitution is not an offense against his profession, but against his office. It amounts, if proven, to such misconduct in office as would subject him to impeachment or to such other procedure to accomplish his removal from office as the laws provide, but it does not and should not put him in peril of proceedings which would destroy his eligibility to practice his profession or remove him from his membership therein, for the obvious reason that so to do would be to permit the accomplishment by indirection of his disqualification to hold, and hence necessarily his removal from his office for which the constitution in sections 17 and 18 of article IV thereof has provided a direct, if not an exclusive, mode of procedure. An apt and well-reasoned line of authority upon this precise question is that supplied by the case of *Falloon* v. *Clark*, 61 Kan. 121 [58 Pac. 990], wherein the Supreme

Court of Kansas determined that "wherever the constitution has created an office and fixed its term and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the legislature to remove such officer or suspend him from office for any other reason or in any other mode than the constitution itself has furnished." The said court rests its authority for this conclusion upon *Lowe* v. *Commonwealth*, 3 Met. (Ky.) 237, and Throop on Public Officers, section 341, which latter authority states the foregoing doctrine to be well settled, and cites in support thereof the cases of *State* v. *Wiltz*, 11 La. Ann. 439, *State* v. *McNeely*, 24 La. Ann. 19, *Brown* v. *Grover*, 6 Bush (Ky.), 1, *Page* v. *Hardin*, 8 B. Mon. (Ky.) 648, and Mechem on Public Officers, section 457. There would seem to exist many reasons, rooted in public policy, why this public and, it may well be said, powerful corporation, considering its membership and the relation thereof to the administration of justice through the judicial arm of the state government, should not lightly be held to be invested with the power and authority over judicial officers which in the instant case it has sought to exercise. Whether or not in any instance the board of governors of said body, or any committee thereof, may be held to be possessed of power to execute such a roving commission as that upon which the committee of said board relied as the basis of its effort to invoke the jurisdiction of the respondent court, or upon which the petitioner in this immediate proceeding seeks to found its claim of right to the issuance of a writ of mandate, we do not need to inquire, for the all-sufficient reason that the record herein discloses that the order of said board of governors creating such committee definitely stated and defined the precise matter with regard to which the committee was invested with power to function. By reference to such order it appears that the committee was appointed "pursuant to the provisions of section 26 of the State Bar Act, to take evidence and make findings on behalf of the board in the matter of the conduct of Carlos S. Hardy, a judge of the superior court in and for the county of Los Angeles." The remaining portion of said order further confines the inquisitorial power of the committee to the particular matter of an alleged receipt of money

from certain persons while occupying his aforesaid office. By reference to said section 26 of said act it will be seen that it has relation solely to the disbarment, suspension, discipline and reinstatement of members of The State Bar. Whether or not the aforesaid order would have sufficed to serve as a complaint against a member of The State Bar, and whether or not the proceedings of said committee and the findings based thereon would have been a sufficient basis for an order of disbarment, suspension or reproval under the terms of said section of the act we do not need to determine, since upon the very face of said order it appears to constitute a direction to said committee to undertake a proceeding against one who, as we have already seen, cannot be brought within the terms of said section or within the inquisitorial powers with which said committee is sought by said order to be invested. It is, however, argued by the petitioner herein that the only capacity in which Carlos S. Hardy was sought to be subjected to the jurisdiction of said committee was in that of a witness before it, and in that capacity he may not be heard to question his duty to be sworn or his obligation to testify.' ▋ This argument is specious, but is wholly lacking in legal support, since under long and well-settled authority a witness before a court or any other inquisitorial tribunal or committee cannot be required to be sworn or to give his testimony, either in any matter over which such court or other body has not jurisdiction or in any matter to the inquiry in which the appearance and testimony of the witness are neither pertinent nor material. ▋ When we look to the proceeding before the Superior Court in and for the county of Los Angeles, which is the respondent herein, and which was a proceeding having for its purpose the issuance of a citation directing said Carlos S. Hardy to appear and show cause in and before said court why he should not be adjudged guilty of and be punished for contempt, we not only fail to find that there was an affirmative showing that the matters concerning which the said Carlos S. Hardy in his capacity of such witness was required to be sworn or to testify were such as would render his testimony material and pertinent; but, on the contrary, it affirmatively appeared upon the face of said proceedings that the precise matter which said committee had been constituted to in-

vestigate, and which it was so proceeding to do, was one over which the committee had no jurisdiction. And when we look further to the application for an alternative writ of mandate presented herein we discover the same precise infirmities upon the very face and content of said application. These defects affirmatively appearing in the proceedings before both of these tribunals would have sufficed in and of themselves to have justified the said Superior Court in its order sustaining the respondent's demurrer to said petition and to also justify this court in refusing to make permanent said writ. We have preferred, however, to put our decision of this matter upon the broader grounds covered by the main considerations embraced in this opinion, and we summarize our conclusion thereby reached herein as follows:

First: The State Bar Act, approved on March 31, 1927, and effective on July 29, 1927, is constitutional.

Second: The provisions thereof provide for the formation of a public corporation embracing in its membership such persons as were entitled to practice law in this state at the effective date of said act, and also such persons as should thereafter become entitled to practice law in this state as provided by law.

Third: The duly elected and qualified judges of the courts of record in this state who were such at the time said act became effective and who have since become and are such judicial officers were and are not, under the inhibition of section 22 of article VI of the state constitution, entitled to practice law in this state during their and each of their continuance in office, and hence under the express provisions of said State Bar Act have not become and during said period are not members of The State Bar of California, and hence are not subject to the jurisdiction, control and processes conferred upon said corporation and the governing board or other officers thereof by the scope and provisions of said act.

Fourth: The said Carlos S. Hardy, affirmatively appearing to have been a duly elected, qualified and acting judge of the Superior Court in and for the county of Los Angeles at the date said act became effective, and at all times since said date, and hence not having at any of said times become or been a member of said corporation, was not, by

virtue of the acts or conduct attributed to him by the order or action of the board of governors of said corporation or its committee as hereinabove set forth, subject to the jurisdiction or processes of the said board of governors of said corporation, or of any committee thereof, so as to be required to do the acts for his failure or refusal so to do he was sought to be adjudged guilty of contempt and to be punished therefor before the said respondent court; and,.

Fifth, and finally, as a result of the foregoing conclusion that the petitioner herein is not entitled to the issuance of a permanent writ of mandate herein.

It is therefore ordered that such writ be, and the same is hereby, denied.

Curtis, J., Langdon, J., Shenk, J., Preston, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices concurred.