[L. A. No. 12551. In Bank.—March 26, 1931.]

D. L. SHAW, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Wilbert C. Hamilton for Petitioner.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Respondent.

THE COURT.—The petitioner applies to this court for a review of the proceedings had against him before the Board of Governors of The State Bar and of the recommendation made by that body that the petitioner be suspended from the practice of the law for the period of one year. There were two accusations presented by the Los Angeles Bar Association against the petitioner before the local administrative committee of the Board of Bar Governors of The State Bar in the county of Los Angeles. In each of these the accused was charged with the violation of rule 3 of the rules of professional conduct adopted by The State Bar of California and approved by this court on

May 24, 1928, which rule reads as follows: "A member of The State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; nor shall he directly or indirectly share with an unlicensed person compensation arising out of or incidental to professional employment; nor shall he directly or indirectly aid or abet an unlicensed person to practice law or to receive compensation therefrom; nor shall he knowingly accept professional employment on behalf of a claimant in a personal injury or death case offered to him as a result of or as an incident to the activities of an unlicensed person who for compensation controls, directs or influences such employment."

The particular facts relied upon as constituting a violation of the aforesaid rule in respect to the first of these accusations were these: In the month of August, 1928, an automobile accident occurred in said county, in which three persons, viz.: Marie Rasmussen, Ruth Rasmussen, and Charles Aney were injured. Very shortly after the occurrence of such injury one Ben S. Levy, then doing business as "Golden State Adjustment Organization", solicited from these injured persons employment as their and each of their agent and representative to adjust, settle or litigate their claims for damages as a result of their injuries, and procured from them and each of them an agreement in writing authorizing him to represent them fully in the matter of the adjustment and settlement of their aforesaid claims and in the course thereof, if necessary, to employ an attorney or attorneys to represent them in the course of such litigation as might ensue, and for which service, including counsel fees, the said Levy was to receive fifty per cent of whatever sums were secured or recovered, in the course of such adjustment or litigation. An action in each of these cases being found necessary or advisable the original complaints therein were prepared by one Fainer at the instance and under the direction of Levy, but shortly after said actions were commenced the petitioner herein was, at the instance of Levy, substituted as the attorney of record in the place and stead of Fainer. The cases were subsequently settled and dismissed at the instance of the petitioner, and from the sum or sums received in the course of such settlement the petitioner retained the sum of fifty per cent which,

lessened by the amount of his agreed fees, he paid over to Levy. The petitioner prior to and in the course of his employment as the attorney of record in said cases had no connection with and did not come in contact with the parties plaintiff in either of said actions up to the time of the settlement and adjustment thereof, his entire activities and conduct of said litigation being carried on through and by virtue of his relationship with Levy.

In the second of said accusations substantially the same facts and conditions were alleged and found to exist with relation to the employment and conduct of the cases referred to therein, with the exception of the fact that the adjuster in the solicitation of the cases above referred to in said accusation was one Gusseroff, who was at the time operating under the name of "Royal Adjustment Company". In the settlement of these cases also the accused received and distributed whatever sums of money were paid in compromise of said claims, receiving as his fee the agreed portion of the fifty per cent to be retained by Gusseroff as his share of the recovery under his agreement with the injured parties.

The evidence taken before the administrative committee supported the foregoing statement of facts and showed that the accused in accepting employment in the cases referred to in these two accusations was fully advised of the fact that each of said so-called adjusters was engaged in the business of soliciting claims of this character, or, to use a modern phrase, was regularly engaged in the business of "ambulance chasing" under the cloak of their respective fictitious titles and names. The evidence educed before the committee further sufficiently showed that the controlling factor in the procurement of the claims referred to in each accusation and in the employment of the accused, and in the conduct and disposition of said causes, both before and after the complaint filed respectively therein, was none other than the solicitor and adjuster, by whom the accused was employed and through whom he was paid, and who in each instance was a person who was unlicensed to practice law.

The first contention which the petitioner urges in justification of his employment and conduct in the causes re-

ferred to in each of said accusations is that in each instance the person by whom he was employed was a licensed adjuster under the provisions of section 633 (e) of the Political Code; and that this being so the provision of rule 3 of the rules for professional conduct of The State Bar, which prohibits a member of The State Bar from sharing with an ''unlicensed person'' compensation arising out of or incidental to professional employment, and which forbids an attorney from aiding or abetting such ''unlicensed person'' to practice law or to receive compensation therefrom, and which makes it unethical and a violation of such rule to accept professional employment on behalf of a claimant in a personal injury or death case offered to him as a result of or as an incident to the activities of an ''unlicensed person who for compensation controls, directs or influences such employment'', has no application to his case or to his conduct in respect to which said two accusations were presented. We find no merit in this contention. The phrase ''unlicensed person'' in the several connections in which the same is used in rule 3 obviously refers to a person unlicensed to practice law and has no reference whatever to that class of persons, not being admitted to practice law, who may obtain permits to do the business referred to in section 633 (e) of the Political Code. ██ It is immaterial, therefore, to this proceeding whether or not the two individuals, neither of whom was a licensed attorney, were licensed adjusters. The law, so far as framed, has not attempted to interfere with or to regulate the activities and engagements of persons who have not been admitted to practice law in their effort to negotiate agreements between themselves and others injured in accidents or casualties of various sorts, whereby they shall be authorized to adjust claims or make settlements for the damages caused by such injuries, provided that in so doing, or in acting under such agreement, if made, such unlicensed persons do not engage in the practice of the law; but the law does undertake to define and limit the right which those who have been admitted to practice law, and as such have become attorneys and counselors at law and by virtue thereof have become active members of the organization known as The State Bar of California, to enter into those certain engagements with such unlicensed persons and particularly with reference to personal injury cases which are

embraced within the inhibition of rule 3 of the rules of professional conduct above set forth.

 Upon the hearing of the two accusations presented against the petitioner before the administrative committee of The State Bar much evidence was presented relating to the relationship existing between the petitioner and the two unlicensed persons who, through the process known as "ambulance chasing" obtained from the persons injured, or their relatives named in said accusations, the agreements under and in pursuance of which the petitioner was professionally employed to represent such injured persons in actions wherein he appeared as their attorney of record, and in the course of which he received as his fees a portion of the money the said unlicensed persons were entitled to retain under their agreements with the persons, or their relatives, who had sustained the injuries out of which the employment of the petitioner arose. An examination of such evidence convinces us of the sufficiency thereof to justify the findings and conclusions of the administrative committee of The State Bar to the effect that the petitioner accepted professional employment on behalf of the persons named as plaintiffs in the personal injury cases referred to in said accusations, and that such professional employment was offered to petitioner and knowingly accepted by him as a result of and as incident to the activities of such unlicensed persons who, for compensation, controlled, directed and influenced such employment, and who shared with the petitioner the compensation which arose out of and was incident thereto. We do not deem it necessary to deal in further detail with respect to said evidence or to the findings of the administrative committee or the final conclusion of the Board of Governors of The State Bar based thereon. We are satisfied from the record before us that the petitioner was justly censurable and that the recommendation of the Board of Governors of The State Bar that he be suspended from the practice of the law for the period of one year should be confirmed.

It is therefore ordered that the petitioner be suspended from practice as an attorney and counselor at law of this state for the period of one year from and after the filing of this order.