[L. A. No. 12466. In Bank.—March 30, 1931.]

ALFRED J. SMALLBERG, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

E. A. Kline and Edward J. Cotter for Petitioner.

William C. Mathes and Philbrick McCoy for Respondent.

THE COURT.—The petitioner applies to this court for a review of the proceedings had before The State Bar of California in the matter of an accusation presented before the local administrative committee of said body in and for the county of Los Angeles, wherein the petitioner was accused of the violation of certain of the rules of professional conduct adopted by The State Bar of California with the approval of this court, and which are specifically set forth in said accusation. A hearing was had thereon before said committee in the course of which much evidence was presented *pro* and *con* at the conclusion of which the committee made and presented to the board of governors of The State Bar certain findings and conclusions, with its recommendation that the petitioner be disbarred. The latter body upon an examination of the record thus presented before it approved certain findings of the committee, but proceeded to make certain other and further findings, and having done so recommended to this court the suspension of the petitioner

for the period of one year. The record of the hearing had before the administrative committee and of its findings and recommendation thereon, as well as the findings and recommendation of the board of governors of The State Bar, have been presented to us upon this application and hearing had thereon, we have carefully examined this record and have reached the following conclusions: The facts as presented in this proceeding do not differ materially from those which were presented to and considered by us in the case of *Townsend* v. *The State Bar of California,* recently decided, 210 Cal. 362 [291 Pac. 837], and the proceedings in *Shaw* v. *The State Bar of California,* in which our decision has just been filed, *ante,* p. 52 [297 Pac. 532].

The petitioner was on or about August 7, 1929, engaged by one Nathan Balkin to act in his capacity as an attorney and counselor at law and to advise with and co-operate with said Balkin in the matter of the commencement and prosecution of two actions to be brought against one B. H. Morgan to recover damages on behalf of two certain parties named Angelita Mena and Cruz Mena for personal injuries sustained in an automobile accident. Nathan Balkin was at the time and for some time prior thereto had been engaged in the business of soliciting and adjusting personal injury cases under the fictitious name of "General Claims Bureau of Southern California". He was not an attorney and counselor at law, but he claimed the right to engage in said business under and by virtue of a license issued to him under the provisions of section 633 (e) of the Political Code. He was, in the terms of modern parlance, an ambulance chaser and was well known by the petitioner herein to have been such at the time of the accident and at the time when he sought to enlist the services of the petitioner as an attorney and counselor at law, and to have obtained in that capacity a contract in writing from the aforesaid two persons much similar in its scope and content to the contracts which were given consideration by this court in the cases of Townsend and Shaw, *supra,* and as to the substance of which the petitioner herein was fully advised at the time he entered into his engagement with Balkin. Among the provisions of said contract was one by which Balkin was to receive a one-third interest in whatever amounts were recovered in the adjustment of or litigation upon said claims.

Balkin was authorized to employ attorneys to assist him in effecting such adjustment or conduct such litigation, with the proviso that all attorney's fees were to be paid out of his share in the outcome. On August 5, 1929, the accident in which the parties were injured occurred. On August 6th the parties injured were interviewed by a clerk of Balkin and their signatures were obtained to said contract. On August 7th relations were established between Balkin and the petitioner herein and on that day the latter was instructed to prepare complaints in two actions to be brought against Ben H. Morgan on behalf of said injured parties. The petitioner prepared the two complaints, attached to each his signature as attorney of record for the plaintiff in each case and delivered the same to Balkin, who took them to Orange County and there procured the verification thereof by Manuel Mena, the husband of Angelita and the father of Cruz. Cruz Mena being a minor, the petitioner also prepared an application for the appointment of Manuel Mena as guardian *ad litem* for her, which he delivered to Balkin, who attended both to the verification of said complaints and their said petitions and to the appointment of Manuel Mena as guardian *ad litem* of the minor. He also attended to the filing of the complaints in the Superior Court of Orange County and to the issuance and service of process thereon. The petitioner did not see or have any communication with Manuel Mena or with either of the parties in said actions until several days after the complaints therein were filed. He then went to the home of Manuel Mena for the first time and in talking with the latter learned that he had in the meantime been advised by friends to consult other attorneys with a view to their substitution for the petitioner in the cases which had theretofore been filed. He thereupon and within the next day or two, of his own motion, caused the two actions to be dismissed without prejudice, but immediately after doing so was served with notice of substitution of other attorneys, who presently came into court and caused the dismissal of said causes to be set aside. Thus ended the petitioner's connection with said cases, but did not end the inquiries of the parties concerned as to the manner in which the connection of the petitioner with the causes had been brought about and the conduct of the same prior to their dismissal. The record in this proceeding may well be said

to illustrate the evils of ambulance chasing in their most vicious and aggravated forms. On the day after Manuel Mena and his family were involved in an automobile collision in which several members thereof, including his wife and minor daughter, were seriously injured, Nathan Balkin, who describes his business as that of "Just Personal Injury Claims" and who had been engaged in that business in Los Angeles for a period of five years, operating under the fictitious name of "General Claims Bureau", having learned of said accident through a communicative police officer, went to the home of Manuel Mena at Yorba Linda, a little town in Orange County, together with his "clerk" so called, who conducted the main negotiations with Mena. They took with them the printed forms of four contracts, which they importuned Mena to sign. They exhibited to him the card of the petitioner and stated that he was the attorney who was to be employed to handle the several cases which Balkin was authorized to commence and prosecute under the terms of the contracts. Mena was an ignorant Mexican, speaking the English language indifferently and being barely able to read and write. He was prevailed upon to sign these contracts, although, as he states, he did not read them and they were not read over to him, the contents thereof being stated in general terms. Having obtained his signature the pair hurried back to Los Angeles to the office of this petitioner there, where they laid the facts rather imperfectly before him and directed him to prepare the two complaints and the papers providing for the appointment of a guardian *ad litem* for the minor child. The petitioner prepared these papers and on the following day Balkin and his clerk went to the home of Mena, where the latter was shown the papers and told generally as to their contents, after which he was taken to the office of a notary public in Orange, where he signed the verification to each of said complaints; whereupon the parties went immediately to the courthouse where Balkin's clerk attended to the filing of the complaints and the issuance of the process thereon. He also attended to the service of such process and to the obtaining of such *ex parte* order as was required for the appointment of Manuel Mena as guardian *ad litem* of his minor child. All of these details were attended to by Balkin or his clerk before the petitioner had ever seen or held any interviews with any member of

the Mena family, and it was only after the petitioner had learned from Balkin or his clerk that the Menas were dissatisfied and were contemplating a change of attorneys that the petitioner held his first interview with the Menas at their home in Yorba Linda, as above stated, immediately after which he of his own motion dismissed said actions.

Shortly thereafter the local administrative committee of The State Bar entered upon the investigation which resulted in the presentation of three separate charges against the petitioner for alleged wilful breaches of certain of the rules of professional conduct which had theretofore been adopted by The State Bar. By the first of these the petitioner was charged with having aided and abetted an unlicensed person or persons to practice law in connection with the claim of Angelita Mena and Manuel Mena against Ben H. Morgan. By the second accusation it was charged that the petitioner had on or about August 8, 1929, accepted professional employment in the aforesaid cases as a result of the activities of an unlicensed person, to wit: Nathan Balkin or General Claims Bureau of Southern California, who for compensation controlled, directed and influenced such employment. Each of the foregoing allegations were alleged to constitute a wilful breach of rule 3 of the rules of professional conduct of The State Bar of California. By the third of said accusations the petitioner was charged with having advised the commencement and prosecution of the two actions above referred to without having been consulted by the plaintiffs therein with reference thereto, and which was alleged to constitute a wilful breach of rule 10 of the rules of professional conduct of The State Bar of California. At a later stage in the proceeding the further accusation was added to the effect that the petitioner had also violated the provisions of subdivision 3 of section 287 of the Code of Civil Procedure.

After a quite full hearing upon the foregoing charges before the local administrative committee that body made findings thereon setting forth substantially and in detail the facts above recited, and as its conclusion thereon it decided as to the first of said charges that it was not true that the petitioner had aided or abetted an unlicensed person to engage in the practice of the law. This conclusion, however, the board of governors of The State Bar, upon the submission of the record upon said hearing, refused to adopt, but

on the contrary expressly found and concluded that in said cases and in approximately ten other cases similarly initiated and handled by the accused he had knowingly and intentionally aided and abetted unlicensed persons to practice law. As to the other charges the board of governors approved the findings and conclusions of the administrative committee, confining its recommendation, however, to the suspension of the petitioner from the practice of the law for the period of one year.

■ Upon the examination of the entire record herein we are satisfied that the board of bar governors was correct in its conclusion to the effect that the petitioner, with relation to the cases above referred to, was guilty of having knowingly and intentionally aided and abetted an unlicensed person or persons to practice law as that term was defined by this court in the recent case of *The State Bar of California* v. *Superior Court*, 207 Cal. 323 [278 Pac. 432], wherein this court adopted the definition of that term contained in the case of *Eley* v. *Miller*, 7 Ind. App. 529 [34 N. E. 836], to wit: "As the term is generally understood the 'practice of the law' is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." In the case of *People* v. *Merchants Protective Corp.*, 189 Cal. 531, 535 [209 Pac. 363, 365], this court gave extended consideration to the question as to what was embraced within the term, "practice of the law", in the course of which it held that, "counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice. The legislature is presumed to have used the words as persons generally would understand them, and not being technical or scientific terms 'to practice as an attorney at law' means to do the work as a business which is commonly and usually done by lawyers in this county (citing numerous cases)".

In the instant matter the record sufficiently shows that a number of acts were done and performed by Nathan Balkin

and his clerk which were clearly within the foregoing category, such as the interviewing of Manuel Mena with a view to the procurement of such written agreements as would enable Balkin, an unlicensed person, to control the conduct of whatever negotiations or litigation might ensue with respect to the aforesaid claims for damages for personal injuries to the several members of his family, including the right to make settlements, employ attorneys, physicians, and to "institute any proceedings in my behalf that you may see fit to effect a recovery". Pursuant to such employment Balkin procured the complaints to be drawn by the petitioner and proceeded to have the same verified and filed, procured the appointment *ex parte* of a guardian *ad litem,* to cause the process to be issued upon the filing of said complaints, and to proceed to make service of the same, all before the petitioner herein had ever seen or interviewed the parties whom he was supposed to represent as attorney of record in said cases. In other words, every essential step in the procurement of said business, in the ascertainment of the facts which were to form the basis of whatever complaints were to be prepared and filed, the presentation of such complaints to the parties who were supposed to verify and who did in fact verify the same, the procurement of the notary to take and certify to such verification, the presentation for filing of the complaints when thus verified, and the issuance and service of the process thereon—all of these things were done by Balkin or his clerk with the knowledge, consent and connivance of the petitioner herein. We are of the opinion that the aforesaid succession of acts in connection with the cases of *Angelita Mena and Cruz Mena* v. *Ben H. Morgan* constituted the practice of the law as that term has been defined in the foregoing decisions of this court, and this being so we are constrained to hold that the petitioner was properly found guilty of having wilfully aided and abetted an unlicensed person or persons to practice law, contrary to the provisions and inhibition of rule 3 of the rules of professional conduct adopted by The State Bar. ▉ We are also satisfied that the petitioner was properly found guilty of a further violation of the provisions of said rule through his acceptance of professional employment on behalf of the plaintiffs in the two personal injury cases above referred to and which professional employment was offered to him as a

result of the activities of an unlicensed person or persons who for compensation controlled, directed and influenced such employment. We are further satisfied that the petitioner was properly found guilty of a wilful violation of the provisions of rule 10 of the rules of professional conduct of The State Bar in that he advised the commencement and prosecution of the two actions above referred to without having been consulted in reference thereto by the plaintiff in either of said actions when, as shown by the record herein, he should have come into such relation of personal contact with the plaintiffs to said actions or with someone other than an ambulance chaser, authorized to represent them, as would have caused the relation of attorney of record of the aforesaid plaintiffs to properly and legitimately be created. As to the alleged violation by the petitioner of the provisions of subdivision 3 of section 287 of the Code of Civil Procedure, we make no finding and are required to make none, since the aforesaid findings and conclusions of the board of governors of The State Bar are sufficient to fully justify the recommendation of that body that the petitioner should be suspended from the practice of the law for the period of one year.

It is therefore ordered that the petitioner shall be and he is hereby suspended from the practice of the law within the state of California for the period of one year.

Rehearing denied.