## In the Matter of JACOB S. STRAHL, an Attorney.

Second Department, June 29, 1922.

Attorney and client — disciplinary proceedings — conduct prejudicial to administration of justice — respondent, justice of Municipal Court of City of New York, not disciplined for acts committed while election-eering as candidate for Supreme Court justice, though method of campaigning disapproved — acts of respondent did not relate to activity as lawyer — method of disciplining justice of Municipal Court is exclusive.

The respondent, a justice of the Municipal Court of the City of New York, will not be censured, suspended from practice or disbarred under section 88 of the Judiciary Law for " conduct prejudicial to the administration of justice," for acts committed by him in conducting his campaign for election to the Supreme Court where the alleged improper conduct consisted in printing and distributing placards that depicted the respondent as protecting tenants against rent profiteers, and appealed to the passions and prejudices of a certain class of the community, namely, renters of apartments and tenements, for votes at the election. While such conduct on the part of the candidate for a judicial office is disapproved, still the respondent's appeal to the electors did not relate to his activities as a lawyer, but entirely to his conduct as a judge on the bench.

There is a method provided for disciplining a justice of the Municipal Court and such method is exclusive.

DISCIPLINARY proceedings instituted by the Brooklyn Bar Association.

*Mortimer W. Byers* and *Samuel H. Ordway*, for the motion.

*Almet F. Jenks* and *Samuel Untermeyer* [*Charles C. Lockwood* and *I. Maurice Wormser* with them on the brief], opposed.

BLACKMAR, P. J.:

The Brooklyn Bar Association on the 8th day of May, 1922, presented to this court its petition charging the respondent with professional misconduct, as defined by section 88 of the Judiciary Law of the State of New York, and moving this court " for such action upon said charges as justice may require, and for such other and further relief in the premises as may be proper." Neither in the petition nor in the briefs of the petitioner is there any request for specific action of the court against the respondent, but it is suggested in the brief that " The occasion is appropriate — in the measured judgment of two Bar Associations — for this Court to take official notice of a practice of which this is the most flagrant and perhaps malignant example, the projection of which in years to come might so destroy respect for our courts and their admin-istration as to undermine the very fabric of our social compact."

However, the question before us for judicial determination is, whether the conduct of the respondent is such as to call upon this court to exercise the power given to it by section 88 of the Judiciary Law to censure, suspend from practice, or remove him from the office of attorney and counselor. The causes prescribed in the statute to justify such action are " professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice." The petition charges no misconduct, malpractice, fraud, deceit, crime or misdemeanor, and, therefore, the inquiry of the court is limited to the question whether the conduct of the respondent is prejudicial to the administration of justice within the meaning of that section, and whether also, in view of the fact that the respondent occupies a judicial office, a case is presented in which the court may properly exercise such power.

The respondent was admitted to practice as an attorney and counselor at law on November 16, 1897. In November, 1909, he was elected as a justice of the Municipal Court of the City of New York for a term of ten years, beginning on the 1st day of January, 1910. Again, at the general election in 1919, he was re-elected for an additional term of ten years, expiring on December 31, 1929. In 1920 he was a candidate in the direct primaries for nomination for the office of justice of the Supreme Court, and having failed of nomination he ran as an independent candidate for that office. The misconduct charged against him consists entirely in the methods of electioneering adopted by him during his campaign for the nomination and for the election. That campaign occurred in the fall following the enactment of the rent and housing legislation of April and September, 1920. The question of eviction for non-payment of rent was then acute, and was a matter not only of great public interest, but of individual private interest to a large number of renters of real property, especially in the tenement districts. Prior to the enactment of those Rent Laws, the Municipal Court in which the respondent presided had been deluged with proceedings brought by landlords for the eviction of tenants, and the struggle between landlord and tenant as to the reasonable amount of rental was continually before that court. The charges made against the respondent concern his electioneering methods which had direct reference to the rental problem. Large placards advocating his election, and containing the expression, " He stopped dispossesses," were posted throughout the Second Judicial District. A postal card sent to electors, a copy of which is annexed to the papers, contains a picture of a judge upon the bench, labeled " Judge Strahl; " before the bench stood an obese person, with a

pig's head and feet, bearing across his waistcoat the legend " Rent Profiteer." There also appeared a woman, apparently in abject poverty, with a small child at her side. Proceeding from the judge's mouth was the legend, " I refuse to evict this tenant." There is also shown upon the postcard a representation of a large window, or picture, showing furniture thrown upon the sidewalk, with a moving van backed up to the curb, and bearing the legend, " Judge Strahl has stopped these Dispossess Evictions." The postcard also contains the words, " Elect Strahl to Supreme Court To Protect You There." On the reverse side are the words, " The other side pictures JUDGE STRAHL in one of his many humane decisions which saved thousands of homes. His faithful service for 11 years justifies his election to SUPREME COURT."

The claim of the petitioner is that the respondent's conduct in distributing these election documents is prejudicial to the administration of justice, in that he suggests that he is a friend of the tenant and hostile to the landlord, and that he had acted so as a Municipal Court justice, and that he would, if elected to the Supreme Court, continue his partiality of conduct in the administration of justice, and that the statement, " He stopped dispossesses," is false as a matter of fact.

The respondent claims that the expression, " He stopped dispossesses," refers to his judicial action in cases where he had enforced the law, and, therefore, was proper comment in his canvass for votes; that the expression represented him in his true light as an advocate of the Emergency Rent Laws, and as a judge who, while on the Municipal Court bench, courageously enforced the law as against undue rent profiteering, so called, and that he was repelling attacks for actions hostile to tenants, to establish which contention he exhibits to this court a copy of a sheet called the *Daily News* which, below a picture of the eviction of eleven families, states that the tenants had been ordered by Municipal Court Justice Strahl to pay three months' back rent and had refused.

We cannot find in these publications the meaning attributed to them by the respondent's counsel. They were not written in defense against unjust attacks; they were not limited to commending his efforts in aiding in the enactment of the Emergency Rent Laws; they were not limited to his conduct on the bench in justly and rightly deciding cases presented before him; they were, obviously, an appeal to the passions and prejudices of a certain class of the community, namely, renters of apartments and tenements, for votes at the election for the Supreme Court; they were statements of his partiality to them in his conduct upon the bench, and intimations that the same conduct would be continued if he

should be elected to the Supreme Court. Like most other electioneering methods, they appealed more to passion and prejudice and class feeling than they did to reason. But I am of the opinion that this conduct is a bad example of a bad system. There has been growing up of recent years, especially, we regret to say, in the Second Judicial District, an increasing and intensive method of appealing to the electorate for votes by candidates for judicial office. The method is repulsive to one whose mind is sensitive to the position which the judiciary should occupy in public life. A candidate for a political office who appears before the public may advocate the principles and policies of his party; a judicial candidate, who is still supposed to be free from political bias, cannot with propriety advocate the policies of any political party, and has nothing to talk about but himself. This method of campaigning began many years ago, but was for a long time innocuous, and conducted moderately and temperately, but competition, the increasing struggle for a place on the ticket, and the two campaigns induced by the direct primaries, has intensified this until it has grown beyond all reason, and has become almost a public scandal. When I say this I am not referring particularly to the conduct of the respondent in this case. He is not the only offender; but his case alone is before this court. It is due to the eminent counsel representing the respondent to state that on the oral argument they expressed in strong and vigorous language their personal disapproval of the prevailing method of electioneering for judicial office. On the other hand, the Brooklyn Bar Association, although invited in connection with this very election to condemn campaigning by candidates, declined to take this course.

The respondent's appeal to the electors did not relate to his activities as a lawyer, but entirely to his conduct as a judge on the bench. If this court should act affirmatively in disciplining as a lawyer a member of the bench for his electioneering methods when a candidate for a higher judicial office, logically, when the proper case is presented, it could not stop short of disbarment. Such disbarment would not vacate the office, and the anomalous, impossible situation would be presented of the exercise of the functions of a judge by one who has been disbarred as a lawyer. Under the laws of this State the right to practice law by one holding such a judicial office as the respondent is suspended during his incumbency.* The question then is, not whether the incumbent is fitted to practice as a lawyer, but whether he is fitted to preside as a judge; and I doubt the wisdom, the propriety or the power of the

---

* See New York City Municipal Court Code (Laws of 1915, chap. 279), § 2.— [REP.

court to pronounce against a judge on the bench the punishment that the law provides for misconduct of a lawyer.    The law provides a method of disciplining a justice of the Municipal Court, and such method is, we think, exclusive.    (*Matter of Silkman,* 88 App. Div. 102.)

I recommend that the proceedings be dismissed.

Kelly, Manning, Kelby and Young, JJ., concur.

Proceedings dismissed.