[Civ. No. 8030. Second Appellate District, Division Two.—November 16, 1931.]

In the Matter of the Guardianship of the Person and Estate of JOHN ALBERT FORTHMANN, Jr., an Incompetent Person. JOHN ALBERT FORTHMANN, Jr., Appellant, v. CHARLES A. MYER, Respondent.

Dockweiler & Dockweiler & Finch for Appellant.

Dunne, Dunne & Cook for Respondent.

FRICKE, J., *pro tem.*—This is an appeal from the order made September 24, 1930, settling the first and final account of the guardian of an incompetent person and discharging the guardian, Charles A. Meyer, and particularly from those portions of the order allowing certain items of expense and guardian's and attorney's fees, and from the provision in the order declaring the amounts allowed to be a charge and lien against the estate of the ward. Respondent has moved the dismissal of the appeal upon the ground that the notice of appeal was not filed within the time required by law. Appellant contends that the document entitled ''Notice and Request for Transcript'' of October 10, 1930, filed sixteen days after the making and filing of the order appealed from is a sufficient compliance with the requirement of a notice of appeal and, if this be true, the appeal was taken within the time allowed by law.

Did the notice and request for a transcript constitute also a notice of appeal? This notice declares that the ward "desires *or* intends to appeal" from the order and concludes with a request for the reporter's transcript. It is no objection to a notice of appeal that it is a part of the request to the clerk to prepare the record and, in recent decisions, construing the language similar to that quoted above, it has been held that "while it would be more satisfactory if the notice had been more explicit, it must be held sufficient to give the appellate court jurisdiction" (*Purity Springs W. Co.* v. *Redwood Ice Delivery*, 203 Cal. 286 [263 Pac. 810], citing *Anderson* v. *Standard Lumber Co.*, 60 Cal. App. 445, [213 Pac. 65], and *Wright & Hogan, Inc.*, v. *Heide*, 72 Cal. App. 16 [236 Pac. 219]). In the Purity Springs case the request for preparation of the record contained the notice that the plaintiff "desires and intends to appeal". In the Wright & Hogan and Anderson cases, *supra*, the language "desires, intends to appeal and has appealed" and "desires and intends to appeal", contained in the respective notices of appeal, were held sufficient declarations of the taking of an appeal. The use of the disjunctive "or" in the notice here before us does not prevent the application of the rule laid down by the cases cited as a notice that a party "desires or intends" to appeal is the equivalent of "desires and intends" to appeal. The matter of real importance is whether the notice of the intent of appealing is clearly indicated by the language used and in the light of the authorities cited the notice and request for a transcript sufficiently included a notice of appeal to give this court jurisdiction. The motion to dismiss is denied.

Appellant contends that the trial court erred in decreeing that four items of expense, in the sums of $600, $600, $500 and $500 for traveling to New York, Seattle and St. Louis, and one item of $1,000 for personal advances to the ward were due the guardian, the basis of the objection being that these items were not supported by any voucher or receipt and that no allowance could legally be made for any item in excess of $20 without the production of a receipt or voucher. Appellant relies upon sections 1789, 1631 and 1632 of the Code of Civil Procedure. Section 1789 provides that "all proceedings by guardians concerning sales of property of their wards . . . accounting and

settlement of accounts, must be had and made as required by the provisions of this title concerning estates of decedents, unless otherwise specifically provided in this chapter. . . . '' Sections 1631 and 1632 relate to the production of vouchers by executors and administrators for items in excess of $20. The latter sections apply only if section 1789 can be construed as relating to a final account, or, as we have here, a first and final account. A reading of the entire section discloses that it relates to the sales of the property of wards by their guardians. The ''black letter'' title at the beginning of the section reads, ''Sales of property to conform to law governing executors'', and the heading of article IV, chapter 14, title 11, part 3 of the Code of Civil Procedure, in which section 1789 is found, bears the title heading, ''Sale of Property and Disposition of Proceeds''. Therefore, not only the language of the section itself but also the titles and headings disclose that the section is applicable only to cases involving the sale of the property of the ward.

The ''black letter'' heading or title of a section of one of our codes when, as here, a part of the enactment, is a part of the section itself and, in construing the section, any limitation, placed upon general language within the section and expressed in such heading, must be given effect. To refuse to do so ''would be to make the law, not to administer it''. (*Sharon* v. *Sharon,* 75 Cal. 1, 16 [16 Pac. 345].) This limitation of the scope of a code section exists even though the language of the section is unambiguous. Thus, though section 549 of the Penal Code by its express language would seem to apply to ''any contract or policy of insurance'', the section is included in a chapter bearing the heading ''Crimes Against Insured Property and Insurance Carriers'' and it was held that this heading limited section 549 to contracts of insurance on property and that it did not include a case involving an accident insurance policy. (*Matter of Wilson,* 30 Cal. App. 567 [158 Pac. 1050]; see, also, *People* v. *Richards,* 86 Cal. App. 86, 90 [260 Pac. 582]; *Bettencourt* v. *Sheehy,* 157 Cal. 698 [109 Pac. 89]; *Farraher* v. *Superior Court,* 45 Cal. App. 4 [187 Pac. 72]; *Alden* v. *Mayfield,* 33 Cal. App. 724, 725 [166 Pac. 382]; *Colthurst* v. *Justice's Court,* 100 Cal. App. 146, 148 [279 Pac. 812].)

We hold, therefore, that section 1789 of the Code of Civil Procedure is limited in its application to cases involving

the sale of the property of a ward by his guardian and does not apply to a general accounting of a guardian such as we have here, and the other sections of the Code of Civil Procedure relied upon by appellant and the decisions involving accounts of executors and administrators are not in point. We have been referred to no authority which would require the production of vouchers for the items above mentioned and there appears to be no provision of law establishing such a requirement.

The objections as to the form of oath to the account were not made in the court below and cannot be raised for the first time on appeal and, furthermore, are met by the supplementary affidavits filed in this court.

This leaves for consideration the item of $1,000 of which, according to his testimony, the ward recalled receiving about $305, and which, according to the testimony of the guardian, represents items of taxicab fares, money advanced to the ward and small items of expense, an average of about $5 a month during the period of the guardianship. It may be noted also that while but $1,000 was claimed, the guardian testified that this was a minimum figure and that the true amount of such advances would possibly be two or three times as great. Section 1776 of the Code of Civil Procedure provides that the guardian must be allowed his reasonable expenses incurred in the execution of his trust. The incompetency of the ward here was due to the excessive use of intoxicating liquor and the trial court was warranted under all the circumstances in considering the various items making up the total of $1,000 claimed as proper expenses in controlling, directing and supervising the ward and in securing the necessary co-operation of the ward and that the sums spent for the trips to New York, Seattle and St. Louis were likewise necessary items of expense incurred on behalf of the ward and in securing the latter's return to Los Angeles. Section 1776 does not require the production of vouchers for expenses incurred and the only requirement for vouchers seems to be that of section 1771 of the Code of Civil Procedure, which applies, however, only to advances for "maintenance, support or education" and the items included in the gross sum of $1,000 were for neither of these. The claim of of appellant that the foregoing items must be substantiated by vouchers is untenable.

■ Appellant contends, as to the various items in the account that it is inherently improbable and untrue that the amounts claimed were expended, but is not sustained by the record. At best there was a conflict of evidence and, the findings of fact of the trial court, being supported by the record, are final. The same may be said as to the attack upon the amounts allowed by the court as guardian's and attorneys' fees.

■ The fourth point is that the allowance of $1,000 for the services of attorneys is so excessive as to amount to an abuse of discretion. These attorneys performed services in preparing the account, the hearing of the accounting and services incident thereto. Appellant does not point out, except in the most general way, of what these legal services consisted and in the absence of a clear showing to the contrary this court cannot do other than hold that there was no abuse of discretion in fixing the amount of the attorneys' fee. ■ Expenses incurred in the settlement of a guardian's account, including the fees of the attorney for the guardian are "reasonable expenses incurred in the execution of his trust" (Code Civ. Proc., sec. 176) and are properly allowed in the discretion of the court. (*Estate of Clanton,* 171 Cal. 381, 387 [153 Pac. 459]; *In re Beisel's Estate,* 110 Cal. 277 [40 Pac. 961, 42 Pac. 819].)

■ The fifth point is that the allowance of $5,000 as due the guardian for his services is excessive and constitutes an abuse of discretion. As stated by appellant, "The reasonableness or unreasonableness of any sum to be awarded the guardian for his services in this matter can only be determined in this case as in any other case which involves the reasonableness of a fee by the peculiar facts of the particular case itself." The guardianship extended over a period of about thirteen years, the court had before it the evidence as to the services rendered by the guardian and, at best, there is a conflict in the evidence as to some of the services. The question is therefore one of fact only and the conclusion of the trial court is final.

■ The sixth point of appellant is that the court erred in finding and decreeing that the allowances made by it were due out of the property of the ward which he had or was entitled to during the existence of the guardianship and that such amounts are a charge and lien against said estate, be-

cause, appellant contends, none of the estate was ever actually or constructively in the possession of the guardian.

Prior to 1922 the ward had no estate but in that year his father died, leaving an estate which at the time of the hearing herein was of the value of about $2,000,000 and in which the ward, under the will, was bequeathed a one-tenth interest. The guardian here was appointed and qualified as one of the executors of the estate of the father and the evidence sustains the conclusion that certain advances were made from the estate to the ward and that, after the filing of the account involved in these proceedings, the ward assigned his interest in the estate to a corporation, receiving stock in the corporation in payment therefor. The estate of the deceased had not been distributed at the time of the hearing of the accounting of the guardian.

As there is no basis for a contention that there was actual possession, we are concerned only with the question of constructive possession. Reduced to concrete form, the question is, did the guardian, as such, have constructive possession of the interest of the ward in the estate of his father and had the court power to declare and order the lien?

Under the terms of his appointment, respondent was a general guardian and as such was the guardian and had the management of "all" the property of the ward within this state. (Civ. Code, sec. 239; Code Civ. Proc., sec. 1765.)

In *Estate of Schluter*, 209 Cal. 286 [286 Pac. 1008], the guardian, appointed in Monterey County, had actual possession of no property of the ward other than a few minor articles of personal property not concerned in the question before the court. The ward died and the guardian who was named as executrix under the will qualified and proceeded to settle the estate. In the meantime the guardian filed her final account in Monterey County and the superior court there made an order settling the account and allowing, as a charge and lien against the property and estate of the decedent, a sum representing the expenditures, fees and expenses incurred by the guardian. The Superior Court of Los Angeles County, where the will was probated, granted a motion and made an order subjecting the assets of the estate to a first lien in favor of the guardian for her claim allowed in Monterey, which order was affirmed on appeal. In con-

sidering the question of constructive possession the Supreme Court quotes the provisions of section 239 of the Civil Code, "A general guardian is ·a guardian of the person or of *all* the property of the ward within this state, or of both", and then observes that the order appointing the guardian entitled the latter to recover the items claimed in the account and subjecting "not only the Monterey property which was in her actual possession . . . but also all the other property of the ward within the state, to a constructive trust in her favor for the amount due . . . " and holds that the Monterey court had jurisdiction to make the order extending the guardian's lien to the Los Angeles property and that the Los Angeles court acquired jurisdiction thereof subject to the liens imposed by the Monterey court. The rule would, of course, be the same where both proceedings were in the same county. The case directly involves the "question of whether the entire estate of said ward . . . was by reason of said guardianship placed in the constructive possession of said guardian" and answers the question in the affirmative. It therefore follows that, in the proceedings herein for final accounting, the *res,* the entire property of the ward in California, including the interest in the estate of his father, was subject to the jurisdiction of the court. This conclusion is further supported by the case of *Estate of Clanton,* 171 Cal. 381 [153 Pac. 459], cited and followed in the Schluter case. There an order, settling the final account of a guardian and ordering that the amount due the guardian should be paid out of the estate of the deceased ward, was sustained. The estate there consisted of moneys realized from the sale by the administrator of the interest of the estate in certain real property. The court, declaring the proceedings for settlement of the guardian's account to be an equitable proceeding *in rem,* concludes that, "The court of equity having the entire matter before it could declare the existence of the lien upon the proceeds of the land and could direct the payment of the amount due the guardian out of that sum."

Appellant contends that the moment the father died his personal representatives were entitled to both actual and constructive possession of his entire estate and that such possession was exclusive. This is beside the point and fails to recognize that the guardian does not claim constructive possession of any part of the estate *of the father* but does claim such possession of the estate and property

*of the ward,* viz., *his interest* in the estate of the father and that an interest in the estate of a deceased person is property. (*In re Dobbel,* 104 Cal. 432, 436 [43 Am. St. Rep. 123, 38 Pac. 87].)

Appellant's presentation of the question whether the probate court had jurisdiction to render a personal judgment against the ward is without support in the record. The order is not a personal judgment but, on the contrary, declares that the amount in question "is due out of the property of the said ward".

The order of the trial court is affirmed.

Works, P. J., and Craig, J., concurred.