THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY (a Corporation), Respondent, v. I. MOST et al., Appellants.

Louis Most and Louis T. Fletcher for Appellants.

Morin, Newell, Brown & Hamill for Respondent.

GEARY, J., *pro tem.*—On May 28, 1936, the plaintiff and hereinafter designated respondent, a Connecticut corporation, filed an action against appellant and numerous co-defendants to foreclose its mortgage upon certain real property in Los Angeles County. The complaint alleged that on or about June 18, 1928, the defendants I. Most and Sophie Most, his wife, and B. Chazan and Pearl Chazan, husband and wife, executed and delivered to plaintiff their promissory note for $25,000, payable five years after date, interest at 5 per cent, payable semiannually, and at the same time, and as security therefor, executed a mortgage upon the real property owned by defendants and described therein; that the principal sum of $25,000 became due and payable on June 18, 1933; that no part thereof was paid; that interest was fully paid to June 18, 1935, and that a portion of the instalment of interest due December 18, 1935, was paid on January 28, 1936, leaving a balance of $281.25 of interest due and unpaid; that the plaintiff had to pay general and special taxes upon the mortgaged property for the fiscal year 1935–1936, in the total sum including penalties of $444.98. It was further alleged that certain named defendants claimed to have liens or other interests in the property; that the same were subject to the mortgage of respondent, and it thereupon prayed judgment against defendants for the sum of $25,000 with interest and other sums alleged due according to the terms of the mortgage, plus $1,000 attorney's fees and costs. To the complaint, appellant I. Most filed his answer wherein he admitted his execution of the note for $25,000 on June 18, 1928, together with the mortgage securing same; alleged that on that date, and for a year prior thereto he had no interest in the mortgaged property, having conveyed his interest therein to the defendant and appellant Sophie Most, his wife, and that he executed the note in question at the request of defendant Ben Chazan, merely as an accommodation maker. He thereupon prayed that he be relieved of any enforceable contribution to his comakers. A motion for sum-

mary judgment was thereafter granted against defendant I. Most.

Appellant, by answer to the complaint, generally and specifically denied each and every allegation of the complaint, except to admit that the sum of $343.75 was paid to respondent on January 28, 1936, as a partial payment of the interest due on December 18, 1935; alleged that she had paid, and therefore denied that any sum was due for a foreclosure search of title, and denied that $1,000 was a reasonable attorney's fee. As a separate defense she alleged the note sued upon was not in default for the reason that on June 10, 1933, a new note in the sum of $25,000, secured by deed of trust was ''entered into'' between the plaintiff and the signers of the original note; that the new note provided for payment of interest at the rate of 5½ per cent in lieu of 5 per cent as in the former note; and that plaintiff had thereafter accepted interest at that rate, and that the deed of trust had thereafter been ''looked upon by the parties hereto'' as a first lien upon the mortgaged property. That the new note and deed of trust, although not recorded, obligated the defendants to pay interest at 5½ per cent semiannually, at which rate they had paid interest from June 10, 1933, to December 18, 1935; and that the same was a first and an equitable lien on the real property by reason of respondent's accepting the interest due in accordance with the terms of the new note. Appellant thereupon prayed that foreclosure be denied; that the trust deed executed to secure the new note be adjudged a lien on the property; that in the event the court should hold that the original mortgage was a valid first lien, it should adjudge there is a valid and existing agreement extending the note and mortgage for five years.

The defendants Chazans and the Standard Furniture Company sued as Four Doe Company, by answer admitted each and all of the allegations of the complaint; and other subsequent lienholders either admitted priority of respondent's lien or defaulted, and their defaults were duly entered.

The court found generally in accordance with the allegations of the complaint; that in September, 1933, defendants Most and Chazan applied for a new loan, and that thereafter, on or about April 25, 1934, they executed a new note dated June 19, 1933, for $25,000, with interest at 5½ per cent, together with a deed of trust to secure payment thereof, and

delivered both to the Security Title Insurance and Guaranty Company, of Los Angeles, as escrowholder. The court further found that the note and deed of trust dated June 18, 1933, were never delivered to the respondent herein, and were never recorded, and the deed of trust never became a first lien upon the property covered by the mortgage; that defendants had paid interest on $25,000 at 5½ per cent from June 18, 1933, to June 18, 1935, in lieu of interest at 5 per cent as provided in the original mortgage note, and that they are entitled to a credit therefor on account of the interest paid at 5½ per cent instead of 5 per cent, in the sum of $250. The court decreed foreclosure of the original mortgage and the payment of $27,660.82 principal and interest, $1,000 attorney's fees and costs. Judgment in accordance with the findings was thereafter filed and entered. From the judgment appellant presents several grounds as the basis for her appeal. These will be considered and determined in the order in which they appear in the briefs.

■ In the instant action respondent is and was represented by the law firm of Morin, Newell, Brown & Hamill, appearing by Kenneth C. Newell of Pasadena, California. Newell, at the time of the trial, was a duly qualified and acting police judge of Pasadena. As such, pursuant to the request of Superior Judge Frank C. Collier, the judge presiding herein, Newell was assigned by the judicial council, on December 30, 1936, to sit as a judge *pro tempore* of the Superior Court in Los Angeles County, from January 2, 1937, to December 31, 1937, in such matters as might be assigned him from time to time by the presiding judge of department Pasadena "A" of said court. Thereafter, between January 18 and June 15, 1937, Judge Newell sat for twenty-three days as a judge *pro tempore* of the said superior court. In addition, it further appears that on July 21, 1937, at 10 A. M., when the instant matter was called for trial, he was sitting in a probate proceeding, and the trial of the instant action was continued for that reason until 2 P. M. of the same date. Affidavits of bias and prejudice were filed herein against Judge Frank C. Collier, the trial judge, on the ground that appellant could not obtain a fair trial by reason of the bias and prejudice resulting from Judge Collier's "interest in and relationship to said Honorable Kenneth C. Newell". This issue was properly determined adversely to appellant.

Indeed, appellant's counsel so admitted. The question of the bias and prejudice of the trial judge is not presented herein. Adopting the language of appellant's reply brief, the first and "main" question presented is: May a judge of a police court, who, in addition to sitting as such police judge, is allowed to practice law, and who is assigned by the judicial council of this state to sit as a judge of the superior court, continue to practice law in the superior court after such assignment?

The authority or legality of the judicial council to assign a police judge to sit as a judge of the superior court by virtue of such assignment is not questioned. The appellant does contend, however, that it is contrary to the provisions of our Constitution and sections 171 and 172 of the Code of Civil Procedure, and against public policy for a police judge acting as judge of the superior court by assignment to practice before the same department of the superior court in which he sits as judge from time to time. In other words, that in view of the constitutional and statutory provisions that a judge of a court of record shall not practice law, the assignment of Judge Newell to the superior court rendered him ineligible to represent the respondent herein. Hence, that this action in which Judge Newell appeared as attorney for the respondent was instituted and prosecuted without authority, and in violation of law, and the judgment rendered is void. Article VI, section 18 of the California Constitution provides in part:

" . . . No justice or judge of a court of record shall practice law in or out of court during his continuance in office; . . . "

The Code of Civil Procedure, section 171, provides:

" . . . No justice, or judge of a court of record, or county clerk, shall practice law in any court of this state, nor act as attorney, agent, or solicitor in the prosecution of any claim or application for land, pensions, patent rights, or other proceedings, before any department of the state, or general government, or courts of the United States, during his continuance in office;"

And section 172, *supra*, provides:

"No justice, judge or other elective judicial officer or court commissioner, shall have a partner acting as attorney or counsel in any court of this state."

The provisions of these sections, however, have not the sweeping effect appellant claims for them. They do not in any way affect the standing of an attorney as such; their clear purpose is directed solely toward judges of courts of record. A violation of these provisions is not an offense against the profession of the law, but rather against the judicial office. As was stated in the case of *State Bar of California* v. *Superior Court*, 207 Cal. 323, 337 [278 Pac. 432]:

"It amounts, if proven, to such misconduct in office as would subject him to impeachment or to such other procedure to accomplish his removal from office as the laws provide, *but it does not and should not put him in peril of proceedings which would destroy his eligibility to practice his profession or remove him from his membership therein, for the obvious reason so to do would be to permit the accomplishment by indirection of his disqualification to hold, and hence, necessarily his removal from his office for which the Constitution, in sections 17 and 18 of article IV thereof has provided a direct, if not an exclusive, mode of procedure.*"

The violation of the Constitution and statutes complained of herein, if any there be, was as a judicial officer rather than as a lawyer, and the professional standing of Judge Newell as a lawyer is not affected. (*In re Silkman*, 88 App. Div. 102 [84 N. Y. Supp. 1025, 1027]; *In re Strahl*, 201 App. Div. 729 [195 N. Y. Supp. 385].) It follows that the right of respondent to be represented by Judge Newell as an attorney was not in any way affected by the constitutional and statutory provisions relied upon by appellant.

Appellant contends, upon appeal as throughout the trial, that her tenants in common, the Chazans, or through them, the Standard Furniture Company, sued herein as Fourth Doe, has paid respondent all sums due on the note sued upon. Hence, that appellant was not in default. In support of this contention appellant caused "blanket" *subpoenas duces tecum* to be served upon respondent and the Standard Furniture Company requiring the production of all books and records of the respondent and of the copartnership Furniture Company from December 1, 1936, to June 23, 1937. During the trial conversations were had between counsel in an effort to determine exactly what books should be produced. In open court counsel for appellant advised

of his desire for ''an opportunity to examine them in order to ascertain whether or not the Standard Furniture Company or Mr. Chazan or Mr. Passman made any interest payments''. Objection that the evidence sought to be elicited was immaterial was sustained by the court.

The ruling was proper. Paragraph IV of the complaint alleged that the principal sum of the note was ''wholly'' due and payable, and no part thereof had been paid; that interest was paid to June 18, 1935, and that $343.75 was paid January 28, 1936, on an instalment of interest in the amount of $625, that fell due on December 18, 1935, leaving a balance of $281.25 due on that particular interest instalment. By answer thereto appellant alleged: ''Denies each and every allegation contained in paragraph VI of plaintiff's complaint on file herein, except to admit that the sum of Three Hundred Forty-three and 75/100 ($343.75) dollars was paid to plaintiff on January 28, 1936, as partial payment of the installment of interest due on the 18th day of December, 1935.'' This, in effect, amounted to nothing more than a denial that the sum mentioned in paragraph VI of the complaint was ''wholly'' due and payable. Under proper rules of pleading the allegations might be construed as an admission that all but a single dollar of the amount claimed due was actually due and payable. The allegation of the answer, containing as it does a negative pregnant, was evasive and wholly insufficient to raise the issue of payment. (*Blankman et al.* v. *Vallejo,* 15 Cal. 639, 645; *Marsters* v. *Lash,* 61 Cal. 622, 624; *Westbay* v. *Gray,* 116 Cal. 660, 663 [48 Pac. 800] ; *Provident Gold Min. Co.* v. *Haynes,* 173 Cal. 44, 48 [159 Pac. 155] ; *Janeway & Carpender* v. *Long Beach Co.,* 190 Cal. 150, 153 [211 Pac. 6] ; *Motor Investment Co.* v. *Breslauer,* 64 Cal. App. 230, 240 [221 Pac. 700].) Under the pleadings there was no issue presented to support the issuance of the *subpoena duces tecum* in the first instance, nor thereafter render any evidence sought to be secured thereby material herein.

■ In September, 1933, appellant Most and Chazan applied to respondent in writing for a new loan of $25,000, at the rate of 5½ per cent (instead of 5 per cent as provided in the existing note of 1928), ''said note to be secured by a first lien''. This application was subsequently approved by respondent, subject to the securing of waivers by junior lien-holders in order that respondent's new loan might also be

secured by a first lien on the property. To that end, on January 20, 1934, Security Title Insurance and Guaranty Company of Los Angeles was designated by respondent as the escrow holder, and requested as such to complete the necessary details to close the loan. On April 13, 1934, H. A. Goldman, counsel for the holder of the junior liens, by letter to the escrow holder, agreed to cooperate by accepting a new note and deed of trust which would be subordinate to the deed of trust to be given the respondent herein. For that purpose reconveyances, a new note and deed of trust and other documents were forwarded by Goldman to the escrow holder. As a condition, however, it was expressly provided therein that the escrow holder should secure from appellant and her cotenants payment of the sum of $75 as Goldman's fee in connection with the matter. The letter further provided: ''This escrow is to be concluded within fifteen days from this date, and if not concluded within that time, then you may take such additional time as may be necessary to conclude that escrow, unless I notify you in writing to the contrary, in which event all papers are to be returned to me.'' About two years later, on May 1, 1936, the attorney's fee not having been paid, Goldman, in writing, demanded the return of all documents from the escrow holder. Thereupon, the above-mentioned documents were returned pursuant to such request, thereby terminating the ability of the escrow holder to secure compliance with respondent's demand that the deed of trust securing the new loan should be a first lien upon the premises in question.

On or about April 25, 1934, appellant Most and the Chazans had executed and delivered to the Security Title and Guaranty Company a new note for $25,000, and a deed of trust securing same, together with appellant's check for $37.50 as a deposit to be applied upon the escrow expenses. Thereafter, they paid interest upon the new note at the rate of 5½ per cent per annum as provided therein. Appellant contends that payment of the interest and respondent's acceptance of the same according to the terms of the new note and the deed of trust securing same, constituted an existing first lien and encumbrance on the property; or, that in any event, payment and acceptance of the interest in accordance with the terms of the new note and deed of trust, amounted to an extension of the existing mortgage.

These contentions are wholly without merit. Respondent offered evidence showing that in all cases where new loans are being negotiated at a different interest rate, whether the new rate be higher or lower, interest is collected at the new rate pending completion of the transaction. In the instant action the closing of the transaction, whereby appellant and her cotenants were to secure a renewal of this loan, was held up and then defeated by the very failure of the borrowers themselves to comply with the express terms of the escrow and their own loan application. As a result of their own continued refusal or failure to pay the escrow expenses and counsel fees mentioned, they absolutely prevented completion of the escrow and respondent's renewal of their loan. Equity still demands that those who seek relief at its hands and in its name have first complied with its inexorable rule that they shall themselves have done or offered to do what is fair and equitable before being entitled to enjoy relief at its hands. In view of all the evidence herein, no citation of authority is required to convince that appellant's exhortation for equity herein lacks the first prerequisite of a proper plea therefor.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.