[L. A. No. 19081.   In Bank.   June 29, 1945.]

CHARLES E. CHRISTOPHER, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

664

J. E. Simpson for Petitioner.

Henry F. Prince for Respondent.

THE COURT.—This is a proceeding to review the recommendation of the Board of Governors of the State Bar that petitioner be suspended from the practice of the law for the period of six months.

The petitioner was admitted to the bar of this state on March 18, 1927. From January, 1935, to January 5, 1943, he was justice of the peace of San Gabriel Township in Los Angeles County. On May 26, 1943, he received a notice to show cause why he should not be disciplined for unprofessional conduct in that he acted as attorney for the plaintiff in an action filed on July 7, 1939, in the justice's court of San Gabriel Township and thereafter prosecuted the action to judgment at a time when he was prohibited by section 171 of the Code of Civil Procedure from practicing law in that court; and that the conduct of the petitioner in the premises involved moral turpitude.

The petitioner had theretofore acted as the attorney for Linda Sandoval and others and had received from them a promissory note payable to himself for $85 on account of legal services rendered. The note was unpaid except as to $10. The petitioner assigned the note to his wife. Acting as

his wife's attorney he caused a complaint to be prepared entitled *Winnie W. Christopher* v. *Linda Sandoval et al.*, in which it was sought to recover the sum of $75 with interest, costs and $20 attorney fees. The petitioner signed the complaint as attorney for the plaintiff and caused it to be filed in said justice's court on July 7, 1939. On August 2, 1939, he caused an order to enter the default of the defendants to be filed and a judgment to be entered in favor of the plaintiff and against the defendants in the sums demanded in the complaint. On the same day he notarized the oath of his secretary to the cost bill. On August 25, 1939, as attorney for the plaintiff, he caused an abstract of judgment to be recorded in the office of the county recorder of said county. On March 15, 1943, about two and one-half months after he had ceased to be a justice of the peace in said township he personally requested that a writ of execution be prepared and issued for the total sum of $107.99, including $20 attorney's fee, and directed that the writ be executed.

In response to the notice to show cause the petitioner filed an answer in which he did not deny the commencement and prosecution to judgment of the action as outlined in the notice to show cause but denied that those steps had been taken "knowingly and willingly" as charged; and alleged affirmatively (1) that he signed the complaint as attorney for the plaintiff and as a notary public took and subscribed to the oath of his wife in verifying the complaint through inadvertence and that the other steps leading to and including the entry of judgment were taken during his absence on vacation and without his knowledge; (2) that the notice to show cause did not state facts which, if true, would involve moral turpitude; (3) that if the facts alleged constituted an offense of any kind it would be an offense against his office as justice of the peace, and that The State Bar of California was without jurisdiction over the petitioner for acts committed against that office; and (4) that in 1939 the district attorney of Los Angeles County presented all of the facts alleged in the notice to show cause to the grand jury of that county whose duty it was to investigate offenses of public officials including justices of the peace, with the result that the petitioner appeared before, but no action was taken by, that body.

The petitioner appeared at the hearing before the local committee. The jurisdictional point, at once presented by him, was sustained by a vote of two to one. The proceeding

was certified to the Board of Governors for dismissal. Thereafter the board decided in favor of jurisdiction and referred the matter to the local committee for a hearing and recommendation in due course. After a full hearing held in November, 1943, the local committee found that the petitioner had committed the acts as alleged and not through inadvertence, but failed to find that moral turpitude was involved. It recommended a public reproval. The board adopted the findings of the local committee and in addition concluded that the conduct charged and found to have taken place involved moral turpitude within the meaning of section 6106 of the State Bar Act, and has recommended to this court that the petitioner be suspended for a period of six months.

On review three questions are involved: 1. Did The State Bar have jurisdiction to take disciplinary proceedings against the petitioner? 2. Are the findings supported by the evidence? and 3. Do the acts charged and found to have been committed by the petitioner constitute cause for disciplinary action?

On the first question the petitioner reiterates his contention that the charges, if true, constituted offenses against his office of justice of the peace, and not offenses against the profession of the law.

Section 171 of the Code of Civil Procedure provides: "No justice, or judge of a court of record . . . shall practice law in any court of this state . . . during his continuance in office; nor shall any justice of the peace practice law before any justice's court in the county in which he resides."

As a member of the bar the petitioner had the right to practice law in all of the courts of this state with the sole exception provided in section 171, that is, that he could not practice law in any justice's court in Los Angeles County while he was a justice of the peace in that county. During the time that he was both a practicing lawyer and a justice of the peace he was acting in a dual capacity with corresponding and reciprocal obligations to the courts and the profession. He was just as much controlled by section 171 in the practice of the law as he was curtailed in his professional activities as a justice of the peace. As a general law of this state section 171 has the same meaning and effect as if it provided that "no attorney at law shall practice law in any justice's court in the county in which he resides while he is a justice of the peace in that county." Practice of the law in violation of that section is an offense against the profession of the law, and an

attorney so offending is subject to disciplinary proceedings through the medium of the State Bar Act even though it might be said that thereby he would offend also against the office of justice of the peace. When it is determined that a law of the state relating to his professional activities has been violated by an attorney at law, the court on review should not be astute to relieve him from the consequences of his act because forsooth he might suffer some other penalty for an offense against his judicial office; nor should he be permitted to use his judicial office to shield him from the consequences of his delinquency as an attorney at law.

The laws of the state, both constitutional and statutory, have been unremitting in an endeavor to safeguard the administration of justice from both the actual and the apparent conflict of interest between court and practitioner. Justices and judges of courts of record are prohibited from practicing law in any court of the state by section 18 of article VI of the Constitution. They are excluded from membership in The State Bar by section 6002 of the State Bar Act. Justices of the peace in certain cities are prohibited from practicing law "in or out of court" during their continuance in office. (Code Civ. Proc., § 103g.) Notwithstanding the right of the petitioner to practice law during his continuance in office, he was bound to observe the statutory injunction not to practice before any justice's court in the county in which he resided. In the conduct of his practice it was his duty "to support the Constitution and law of the United States and of this State," and "to maintain the respect due to the courts of justice" (State Bar Act, § 6068, subds. (a) and (b)). Section 171 was binding on the petitioner both as a justice of the peace and as a lawyer. By violating that statute he was nurturing a conflict in interest which the fundamental and statutory law prohibited. Since his right to practice law continued, he remained amenable to the processes of The State Bar.

The petitioner seeks to sustain his contention on the jurisdictional point by reliance on the Hardy case (*State Bar* v. *Superior Court,* 207 Cal. 323 [278 P. 432]). That case can be of no assistance to him. There The State Bar sought to prosecute proceedings against a judge of the superior court, a court of record, for the alleged practice of the law contrary to his obligation as a member of the legal profession. This court held that The State Bar was without jurisdiction so to

proceed for the reason that the right of the accused to practice law was suspended under constitutional provision during his continuance in office and that as he was not a member of The State Bar he was not amenable to its disciplinary processes.

The jurisdiction of the offense was therefore within the accusatory powers of The State Bar, and the decision of the Board of Governors on the point was correct.

■ On the question of the sufficiency of the evidence to support the findings of the local committee and of the Board of Governors the petitioner contends that the evidence supports only the conclusion that he did not know what he was doing when he signed the complaint as attorney for the plaintiff, the verification of his wife appended thereto, and as notary on the cost bill; that they were so signed by inadvertence, and that the subsequent steps in the litigation were taken without his knowledge. The record does not support the contention.

Miss Ellen C. Neilan was the petitioner's legal secretary from February, 1937, to April, 1942, when she became assistant clerk of the justice's court of San Gabriel Township and later, in November, 1942, court clerk, a position she occupied at the time of the hearings in the proceedings before The State Bar. She testified that in the latter part of June, 1939, the petitioner handed to her the promissory note with the request that she prepare a complaint based thereon in the name of Mrs. Christopher as plaintiff and instructed her to file it in the justice's court. Before the complaint was prepared she had a conversation with the petitioner in which she called his attention to the fact that the action could not be brought in the municipal court of Los Angeles because the parties defendant were residents of San Gabriel Township. She testified that she had no recollection of a conversation in which she was told, as claimed by the petitioner, to file the complaint in his name in the justice's court.

The complaint was verified by Mrs. Christopher and her oath was subscribed to by the petitioner as notary public. A certified copy of the complaint is an exhibit in this proceeding. In support of the contention of the petitioner that he signed the complaint and verification by inadvertence he relies on the fact as testified by Miss Neilan that it was her custom to clip back pages for his ready signature on the appropriate page, and his own statement that he did not notice

that he was verifying his wife's signature. Miss Neilan stated that she did not remember whether she followed this practice on that occasion, but that she recalled that Mrs. Christopher signed the verification on her desk and that Mr. Christopher was there at the time and signed the endorsement on the note, the complaint as attorney for the plaintiff, and the verification as a notary; that petitioner left about July 1, 1939, for a month's vacation and she filed the complaint on July 7th; that in accordance with her usual custom she signed the petitioner's name to the order to enter the default judgment; that she signed her own name to the memorandum of costs, which the petitioner notarized on his return prior to August 2nd. The default judgment was entered and the cost bill was filed on August 2, 1939. She testified that she prepared the writ of execution and issued it in March, 1943, when she was clerk of the court, at the personal request of the petitioner.

The petitioner testified that he instructed Miss Neilan to commence suit on the note in Mrs. Christopher's name in the municipal court in Los Angeles; that following the conversation concerning the impropriety of filing the complaint in the municipal court he instructed her to file it in the justice's court in his own name. He admitted his signature on the complaint as attorney for the plaintiff, and on another page his signature as notary public on the affidavit of verification signed by his wife. He stated that he signed the complaint and verification affidavit when his wife was not there, but that he had no distinct recollection of signing the same because it was the practice of his secretary to prepare papers and stack those requiring his signature on his desk folded back and clipped so that only the signature page appeared; that the practice was followed in this case; and that he did not observe at the time that the complaint was entitled in the name of his wife as plaintiff; that he thereupon departed on vacation for the month of July, during which time another justice of the peace in the county sat in the San Gabriel Township court; that after a complaint was signed it was the practice in his office for his secretary to follow the matter through in default cases; that his signature as notary public appeared on the memorandum of costs and disbursements filed after his return from vacation, but that he did not notice at that time what action was involved; that the endorsement to his wife on the reverse side of the note was not cancelled because that question never came to his attention; that the first time he

had notice of the facts was when the matter came before the grand jury in October, 1939, following which no proceedings were taken against him by that inquisitorial body.

The local committee made a finding that "it is not true that at the time suit was filed on said promissory note it was filed in the name of Winnie W. Christopher through inadvertence, but that said complaint was filed in said court in the name of the plaintiff therein named with the full knowledge of" the petitioner. Similarly the committee found that the acts of the petitioner in causing to be filed the order to enter default judgment including $20 as attorney fees, and the memorandum of costs and disbursements including $1.00 as fees for notarial services performed by the petitioner, were not done through inadvertence but with the full knowledge of the petitioner. Likewise as to the abstract of judgment filed for record on August 25, 1939, the committee found that the acts of the petitioner were not inadvertent but were with his full knowledge.

It is obvious that the local committee and the Board of Governors in the light of the record evidence believed the testimony of Miss Neilan and refused to believe the testimony of the petitioner on the vital questions involved. An examination of the transcript and the exhibits in the proceeding supports the conclusion that there is a sound basis for not according full credit to the testimony of the petitioner.

The petitioner admitted that at the time of the transactions in question he was familiar with the provisions of section 171 of the Code of Civil Procedure and that he knew it was improper for him to appear as attorney on behalf of anyone in an action filed in his own court. His claimed inadvertence in signing the complaint as attorney for the plaintiff, in notarizing the cost bill and particularly in notarizing his wife's verification of the complaint is persuasively negatived by an examination of the exhibits. The complaint shows that he signed it as attorney for the plaintiff immediately above the typewritten words showing that relationship. His wife signed the verification. The petitioner's signature is almost immediately opposite and very near the signature of his wife. Aside from other implications arising from his action as a notary public, as he claims it took place, credulity is taxed to the breaking point to believe that when he signed as notary he did not know that he was taking the verification of his wife. The facts and circumstances make the asserted custom

of clipping back pages dubious support for his claim of inadvertence. He admitted that when he obtained the writ of execution in March, 1943, he knew all of the facts surrounding the grand jury investigation. Since he personally obtained that writ he should not be heard to say that he did not know that the item of attorney's fees was specifically included therein. Even if it be assumed that he did not, through inadvertence, appreciate that the item of attorney's fees was sought by the allegations and the prayer of the complaint, he cannot avoid knowledge of the inclusion of that item in the writ of execution. Since he must have known of such inclusion, he likewise must have known that he was not entitled to an attorney's fee if he was prosecuting the action in his own name as plaintiff. Certain it is that if he believed that the action had been prosecuted in his own name, he should have taken steps to relieve his former clients, the judgment debtors in the case, from the payment of the unjust exaction of an unauthorized attorney's fee. He took no such steps. It must therefore be concluded that the evidence is sufficient to support the findings of the local committee and the Board of Governors and that it would be improper, under all of the circumstances of the case, for this court, in exercising its supervisory powers in state bar matters, to find contrary to those findings.

On the final point the petitioner contends that the facts as found would not, if true, disclose moral turpitude on his part. The presence of moral turpitude sufficient to justify disbarment or suspension may be disclosed under varying circumstances. For example, if an attorney is convicted of a felony or misdemeanor involving moral turpitude the record of a final judgment of conviction is conclusive against him. (State Bar Act, § 6101.) The commission of an act of moral turpitude, dishonesty or corruption, whether committed in the course of his relations as attorney or otherwise, is sufficient cause for suspension or disbarment. (State Bar Act, § 6106; cf. *Jacobs* v. *State Bar*, 219 Cal. 59 [25 P.2d 401].) Such provisions were undoubtedly included in the State Bar Act because it was realized that the acts of an attorney in violation of law, aside from any breach of his duty as an attorney, might reflect upon his integrity and fitness as an attorney and require his suspension or disbarment. But in prescribing the duties of an attorney and imposing penalties for a breach thereof, it was not considered that moral tur-

pitude, dishonesty or corruption should be discovered as a separate and distinct element of the act. When it was provided in section 6103 of the State Bar Act that ". . . any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension," such violation was to be deemed sufficient to support a disciplinary proceeding. We are not here dealing with the case of a violation of a traffic or other law applying to the public in general and which has no relation to the duties of an attorney. The law violated by the petitioner was one specially directed to him for his observance and faithful adherence as a justice of the peace and as an attorney, the violation of which would tend to bring the courts and the profession into disrepute. To say that the violation of such a law does not constitute grounds for discipline would be to set at naught a salutary legislative enactment designed to safeguard the public as well as the attorney in professional relationships.

Since it must be held that the petitioner knowingly practiced law in violation of a statute governing his duties as a lawyer his conduct in that respect was a breach of his duty to support the Constitution and laws of this state and to maintain the respect due to courts of justice (State Bar Act, §6068(a) and (b)). It was also a violation of the oath of an attorney prescribed by section 6067 of the State Bar Act. Such conduct therefore constituted cause for discipline pursuant to section 6103 of that act.

In accordance with the recommendation of the Board of Governors, the petitioner is hereby suspended from the practice of the law in this state for a period of six months commencing thirty days from and after the date of the filing of this opinion.

CARTER, J.—I dissent. The majority opinion in this case evades the material issues and disregards pertinent authorities which should control the disposition of the case. While giving lip service to the so-called Hardy case (*State Bar* v. *Superior Court*, 207 Cal. 323 [278 P. 432]), it utterly disregards the holding in that case and emasculates the doctrine therein enunciated. It fails to even mention the numerous cases which hold that a violation of a statute relating to the duties of justice of the peace is an offense against the judicial office and not against the legal profession or practice of law. It does not attempt to differentiate or suggest any basis for a

distinction between a violation by a justice of the peace of the provisions of section 170 of the Code of Civil Procedure and a violation of the provisions of section 171 of that code. It fails to suggest any basis for its holding that petitioner's acts involved moral turpitude.

In my opinion the offense of a justice of the peace in violating section 171 of the Code of Civil Procedure, if proven, may amount to such misconduct in office as would subject him to removal from office in the manner provided by law. It is now held by the majority that it also places him in peril of proceedings which may destroy his eligibility to practice his profession or remove him from his membership in The State Bar and thus accomplish by indirection his disqualification to hold, and hence, necessarily, his removal from office for which the Legislature has set up a direct, if not exclusive, mode of procedure. (Pen. Code, § 758 et seq.) A justice of the peace of a Class A township must be an attorney at law. (Code Civ. Proc., § 159a.)

In *State Bar* v. *Superior Court,* 207 Cal. 323 [278 P. 432], sought to be distinguished by the majority opinion, attention was directed to the foregoing dangerous and untoward consequences. It was there held that The State Bar was without jurisdiction to proceed against a judge of the superior court for the reason that the right of such judge to practice law was suspended during his continuance in office. In the course of the opinion this court stated: ''There would seem to exist many reasons, rooted in public policy, why this public and, it may well be said, powerful corporation, considering its membership and the relation thereof to the administration of justice through the judicial arm of the state government should not lightly be held to be invested with the power and authority over judicial officers which in the instant case it has sought to exercise.'' Notwithstanding this declaration, I am disposed to hold that inasmuch as a justice of the peace may act in the capacity of a lawyer with certain restrictions it may be desirable that The State Bar be not completely shorn of regulatory powers over him. However, I cannot agree with the majority, that this court should not be astute to heed any demarcation between an offense committed against a judicial office and one that may be committed against the profession of an attorney at law. In our system of government, the independence of the judiciary is fundamental. It is essential in all courts that the judges who are appointed or elected to. administer the law

should be permitted to administer it under the protection of the law, independently and freely, without favor and fear. The proper method for ridding the people of any district, county, township, or municipal officer, for misconduct in office is set forth in sections 758 et seq. of the Penal Code. A justice of the peace is in need of protection similar to any other judge or justice, hence, should a disciplinary proceeding against an incumbent justice of the peace come before us, I do not want to be foreclosed by the instant decision from considering the applicability and propriety of the holding in the case of *State Bar* v. *Superior Court, supra,* that the regulatory power of The State Bar over a justice of the peace be deemed suspended, at least, to the extent that his right to practice law has been suspended. Thus, if what is charged against him is a violation of that suspension, it would not be a matter for State Bar action, but would leave the matter of his qualification to hold office to be determined in the manner provided by law.

In some jurisdictions it is held as a logical sequence of the rule that a judge cannot be disciplined, as a lawyer, during his tenure of office because of misconduct, that such acts cannot be made the basis of disbarment proceedings afterwards. (*In re Jones,* 202 La. 729 [12 So.2d 795]; *In re Meraux,* 202 La. 736 [12 So.2d 798].) However, it has been determined otherwise in this state (See *In re Craig,* 12 Cal.2d 93 [82 P.2d 442]). Under this rule it would seem to follow that petitioner being no longer a justice of the peace, The State Bar has jurisdiction over his person and of the acts committed by him while he was a justice of the peace. Notwithstanding this rule it does not follow that cause for discipline has been made out in this case.

The majority opinion seeks to obviate the necessity of finding moral turpitude in the conduct attributed to petitioner by holding that the violation of section 171 of the Code of Civil Procedure constitutes an offense against the profession or practice of law. Local Administrative Committee #8 for the County of Los Angeles, before whom the disciplinary proceedings in the instant matter were initiated found that petitioner had committed the acts charged against him, but did not find any moral turpitude. The Board of Bar Governors (by a vote of 12 to 3) made an additional finding and conclusion to the effect that the conduct charged and found to have taken place involved moral turpitude. The theory of respon-

dent, The State Bar, is that petitioner should be disciplined pursuant to section 6106 of the Business and Professions Code (State Bar Act), which provides that an attorney may be disbarred or suspended "for the commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise." Petitioner has vigorously attacked the conclusion that his conduct constitutes moral turpitude. The majority opinion makes no effort to meet this attack but as aforesaid seeks to obviate the necessity thereof. In order to arrive at their conclusion that petitioner may be disciplined irrespective of the discovery of moral turpitude "as a separate and distinct element of the act," the majority have by-passed numerous authorities which distinctly hold that an offense such as charged against petitioner is an offense against the judicial office which he holds, only, and not an offense against the profession or the practice of law. (*State Bar* v. *Superior Court,* 207 Cal. 323 [278 P. 432]; *Baird* v. *Justice's Court,* 11 Cal.App. 439 [105 P. 259]; *Connecticut M. Life Ins. Co.* v. *Most,* 39 Cal.App.2d 634 [103 P.2d 1013]; *In re Silkman,* 88 App.Div. 102 [84 N.Y.S. 1025]; *In re Strahl,* 201 App.Div. 729 [195 N.Y.S. 385].)

*State Bar* v. *Superior Court, supra,* involved an application by The State Bar for a writ of mandate to compel the Superior Court of Los Angeles County to require Carlos Hardy, a judge thereof, to testify before a committee of the Board of Governors of The State Bar investigating charges against him involving the practice of law and acceptance of $2,500 in fees while a judge of the Superior Court of Los Angeles County. Article VI, section 22 of the state Constitution then provided that: "No judge of a court of record shall practice law in any court of this state during his continuance in office." The writ was denied. During the course of the opinion this court stated: "An attorney and counselor at law who may be the incumbent of a judicial office, by essaying to practice law, does not by so doing violate any particular principle of legal ethics to which our attention has been directed. This is shown by the fact that the occupants of judicial positions in the courts of this state not of record, who are otherwise eligible so to do, may and in most instances do practice law without any suggestion that in so doing they are violating either former or existing laws defining and regulating the ethical practices of the legal profession. The offense of a judge of a court of rec-

ord who violates the foregoing provision ·of the constitution is not an offense against his profession, but against his office.''

In *Baird* v. *Justice's Court, supra,* a judgment of a justice's court ordering a police judge ''disbarred from practicing law in the Justice Court of Riverside Township, so long as he shall remain Police Judge of said city,'' was annulled. One ground of decision was that if as a matter of fact the police judge had violated the law by engaging in the practice of his profession before a justice of the peace, when at the same time he was occupying a judicial position, his offense is that of a judicial officer and not that of an attorney, and that if he subjected himself to any penalty by reason of misconduct, it was that provided by section 758, Penal Code (removal from office).

In *In re Silkman, supra,* it was urged that the New York Supreme Court, Appellate Division, had ''inherent'' power to discipline lawyers, and ''that an offense committed by a Judge in practicing, when prohibited, is likewise an offense committed by him as a lawyer, which calls for the exercise of the inherent power.'' It was held that if the accused ''has violated the injunction of the Constitution, he has offended as surrogate, and not as an attorney. As an attorney his right to practice law is undoubted, and it is only as surrogate that it is or can be questioned, and it follows that the violation of the Constitution, if it has been violated, has been committed by him in his judicial or official, rather than in his professional capacity.'' A similar holding was made in *In re Strahl,* 201 App.Div. 729 [195 N.Y.S. 385].

The place occupied by section 171 in the Code of Civil Procedure discloses similarly that it is a disqualification or prohibition against the conduct of judges and was never intended to be a statute regulating the conduct of attorneys as such. It is found under the chapter heading: ''Disqualifications of Judges.'' The section of the code immediately preceding, and a part of the same chapter, is the more commonly known section 170, prescribing grounds for disqualification of a ''justice, judge, or justice of the peace'' for personal interest, interest by relationship, prior service as attorney and bias or prejudice. The chapter containing sections 170 and 171 is a part of part I, title II of the code. Part I is titled, ''Courts of Justice,'' and title II bears the title, ''Judicial Officers.'' On the other hand, chapter I, title V of part I of the Code of Civil Procedure as originally enacted related to attorneys as such and bore the heading, ''Attorneys and Counselors at

Law.'' The sections therein contained have for the most part been repealed and reenacted as chapter IV of the Business & Professions Code, under the heading, ''Attorneys.'' These headings or titles being a part of the codes as originally enacted or amended by the Legislature may be consulted in interpreting the sections of the codes, so that they may be given effect according to their true import. (*Sharon* v. *Sharon*, 75 Cal. 1, 16 [16 P. 345]; *In re Forthmann*, 118 Cal.App. 332, 336 [5 P.2d 472]; 23 Cal.Jur. § 147, p. 772.)

It is manifest from the foregoing authorities and what has been said that section 171 of the Code of Civil Procedure does not purport to regulate the duties of a lawyer. Its obvious purpose is to prevent reciprocity in the administration of justice that might result if justices of the peace in the same county were allowed to practice law before each other. The consequences of the instant decision are far-reaching. If a justice of the peace may be disciplined by The State Bar for a violation of section 171 of the Code of Civil Procedure, then he may be similarly disciplined for sitting in a case in which he is interested in violation of section 170 of that code.

The charges against petitioner not amounting to an offense against the profession or the practice of law, disciplinary proceedings against him are not justified unless his conduct falls within section 6106 of the Business & Professions Code, which provides that an attorney and counselor may be disbarred or suspended for ''the commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise.'' A consideration of the record before us leads to the inescapable conclusion that the additional finding and conclusion of the Board of Bar Governors (not made by the local administrative committee), that petitioner ''committed acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106 of The State Bar Act,'' cannot be sustained. According to the uncontradicted evidence adduced at the hearings before the local administrative committee, the promissory note sued upon was given for a legal and just claim, and was unpaid in the amount sued for. No attempt was made to show that the makers of the note, the defendants in the action brought upon it, at any time had, or believed they had, a defense to the action. The notice to show cause does not even allege facts showing that petitioner com-

mitted any acts which were detrimental to the makers of the note or that any advantage was obtained by him contrary to their legal obligations. In *Wallis* v. *State Bar*, 21 Cal.2d 322 [131 P.2d 531], it appeared that the petitioner borrowed money from a client on a number of occasions, promising interest and large bonuses, in order to make speculative investments, Representations in regard to the investments not warranted by any information in the possession of the petitioner were made to the client. It was contended that because of the making of these representations petitioner should be suspended for six months. We held that even if the client had a cause of action for fraud against the attorney under the rule stated in section 1572 of the Civil Code, disciplinary action was not justified because there had been no intent to mislead. (*Cf. In re Bryant*, 21 Cal.2d 285, 296 [131 P.2d 523] ; 3 Cal.Jur. § 122, p. 727.)

At the time of the filing of the suit complained of, July 7, 1939, petitioner actually was not sitting in his court, but was on vacation, and remained on vacation while service of copies of the complaint and summons were made on defendants and beyond the time in which defendants were directed to answer. A visiting justice from another township sat in petitioner's court during the entire month of July, 1939. Petitioner did not act upon any issue of law or fact in the matter, but on the contrary testified that if any issue of fact or law arose while he was sitting he intended to disqualify himself and call in another justice. The action being in contract for the amount of $75, all the parties residing within San Gabriel Township, and the note being payable within the township, the justice's court of that township was the proper court for institution of the action. (Code Civ. Proc. (1937), §§ 112, 395.) As heretofore stated, it was not alleged or shown that any ulterior motive prompted bringing the action, or that the makers of the note have beent deprived of a defense. At the time of issuance of execution, petitioner had ceased being a justice of the peace, and the Board of Bar Governors made no finding conforming to the allegations in the notice to show cause that petitioner had caused the issuance of the writ of execution and delivered it to the constable knowing ''full well that the judgment rendered in said action theretofore was wholly void and of no legal effect.'' The judgment was not void. (*Connecticut M. Life Ins. Co.* v. *Most*, 39 Cal.App.2d 634 [103 P.2d 1013].) The matters herein concerned, except the issuance and levy of

execution, occurred during the summer of 1939 and were not repeated, yet no action was taken by respondent until May, 1943. Petitioner ceased being justice of the peace and returned to the full time practice of law in January, 1943. Therefore, the delay in instituting proceedings may have been caused by respondent's doubting whether or not it had jurisdiction while petitioner continued to be a justice of the peace, although according to its argument in this proceeding it had the power to investigate and maintain proceedings at all times. At any rate, in 1940, when the matter was fresh in the minds of everyone, it was investigated by the Los Angeles County grand jury, a body that had the power to present an accusation directed toward removing petitioner from office, "for willful or corrupt misconduct" (Pen. Code, § 758 et seq.), which body, after summoning and hearing witnesses, took no action. Evidently it was of the opinion that the offense, if committed, did not include "willful or corrupt misconduct in office." I am equally convinced that it did not involve moral turpitude and that therefore these proceedings should be dismissed.

The majority apparently attempt to derive some support from a statement made toward the close of the opinion, that "The presence of moral turpitude sufficient to justify disbarment or suspension may be disclosed under varying circumstances. For example, if an attorney is convicted of a felony or a misdemeanor involving moral turpitude the record of a final judgment of conviction is conclusive against him. (Section 6101, State Bar Act.)" Whatever the intended significance of the statement it clearly has no application to the facts of this case. Petitioner has not been convicted of any crime and the majority opinion fails to state any basis for holding him guilty of acts involving moral turpitude. For a definition of moral turpitude see *In re O'Connell*, 184 Cal. 584 [194 P. 1010]; *In re Craig, supra; In re Rothrock*, 16 Cal.2d 449 [106 P.2d 907, 131 A.L.R. 226].

The effect of the majority opinion is to overrule the Hardy, Baird and Connecticut Mutual Life Insurance cases, and also the Rothrock case, without giving consideration to the reasoning which formed the basis of those decisions. Certainly if these cases are to be overruled, some mention should be made of them in the majority opinion and some basic reason should exist for such action. I challenge anyone to read the last cited cases and reconcile the views therein expressed with the majority opinion in this case.

From what I have said in the foregoing dissenting opinion it is obvious that the proceeding against the petitioner should be dismissed.

Schauer, J., concurred.

Petitioner's application for a rehearing was denied July 26, 1945. Carter, J., and Schauer, J., voted for a rehearing.